COLEMAN, Appellant,

v.

OHIO ADULT PAROLE AUTHORITY et al., Appellees.

[Cite as *Coleman v. Ohio Adult Parole Auth.* (1996), 115 Ohio App.3d 212.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE03-353.

Decided Oct. 3, 1996.

*David H. Bodiker*, Ohio Public Defender, *Michael J. Benza*, Assistant Public Defender, and *Dale A. Baich*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Todd R. Marti*, Assistant Attorney General, for appellees.

JOHN C. YOUNG, Judge.

Alton Coleman, appellant, filed a complaint in the Franklin County Court of Common Pleas on December 6, 1994, naming as defendants the Ohio Adult Parole Authority ("APA"), the Ohio Parole Board, and the individual members of both entities. The complaint sought, *inter alia*, declaratory and injunctive relief as a result of the "Death Penalty Clemency Procedure" adopted by the APA and approved by the director of the Ohio Department of Rehabilitation and Correction ("DRC") in July 1994. As relevant here, the clemency procedure is essentially a process by which the parole board investigates and considers the recommendation it is to make to the Governor regarding pardons, commutations of sentences, or reprieves for inmates sentenced to death. R.C. 2967.03 and 2967.07.

Of particular significance here are provisions of the clemency procedure directing an APA/parole board representative to conduct an interview with the "condemned inmate" without counsel present. Then the parole board is to conduct a review hearing, at which the attendance of others (including the inmate and his counsel) is "at the sole discretion of the parole board chair." Clemency Procedure, Paragraph IV(D).

The factual and procedural backgrounds giving rise to this case are undisputed. Appellant, an inmate in the custody of DRC, was twice sentenced to death in Hamilton County in 1985.[1] The present controversy arose in November 1994, when counsel for appellant learned that the APA intended to conduct an

---

1. For affirmances on direct appeal, see *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, and *State v. Coleman* (1989), 45 Ohio St.3d 298, 544 N.E.2d 622.

interview with appellant and that a review hearing was scheduled to be held pursuant to the new clemency procedure.

Counsel for appellant responded by letter, advising the parole board chairperson that the clemency procedure would interfere with the habeas corpus petition he intended to file in federal court. He further advised the parole board that any attempt by it to interview appellant without the presence of counsel would interfere with the attorney-client relationship and with appellant's right to counsel.

When representatives of the APA attempted to meet with appellant, they were informed that appellant, upon advice of counsel, declined to meet with them without his attorney present. Upon being advised by the parole board chairperson that the scheduled clemency review hearing would not be postponed, counsel for appellant initiated the present action to challenge the clemency procedure as invalid for noncompliance with statutory requirements for adoption of rules by administrative agencies and unconstitutional on due process grounds.

In January 1995, counsel for the APA and other named defendants ("appellees") filed a motion to dismiss. The trial court ultimately granted the motion, finding that the clemency procedure is neither invalid for failure to comply with statutes governing promulgation of administrative rules nor violative of due process.

Appellant has timely appealed, assigning three errors for our consideration:

"Assignment of Error No. I

"The trial court erred in holding that the death penalty clemency procedure does not constitute a 'rule' and did not need to be adopted pursuant to R.C. Chapter 119 or R.C. Sec. 111.15.

"Assignment of Error No. II

"The trial court erred in holding that the death penalty clemency procedure is an internal management rule and did not need to be adopted pursuant to R.C. Sec. 111.15.

"Assignment of Error No. III

"Even if the governor's clemency power is largely unfettered, where the APA is statutorily required to present to the governor an investigation report and recommendation before he may review a clemency application, the appellant must be afforded due process in conducting that investigation and resulting report."

Because this court finds that the trial court should have dismissed appellant's complaint on other grounds without addressing the issue of whether or not the clemency procedure constitutes a rule which should have been promulgated pursuant to R.C. Chapter 119 or R.C. 111.15, appellant's assignments of error are

overruled, and the judgment of the trial court is affirmed as hereinafter explained.

■ In *Wise v. Dept. of Rehab. & Corr.* (1992), 84 Ohio App.3d 11, 616 N.E.2d 251, this court considered a case wherein the plaintiff, Richard Wise, Jr., brought a declaratory judgment action in the Franklin County Court of Common Pleas asking the court to find the "Parole Guidelines–Policy Statement" invalid because it was not properly promulgated. This court held as follows:

"Assuming that that statute [R.C. 5149.10] would require the guidelines in question to be adopted as a rule, declaratory judgment is not an appropriate remedy to preclude utilization of a rule not properly adopted in accordance with statutory procedures." *Id.* at 14, 616 N.E.2d at 253.

On the authority of *Wise,* the trial court should have dismissed appellant's declaratory judgment action, and this court should affirm the trial court's decision accordingly.

However, even assuming for the moment that a declaratory judgment action is the proper way to attack the clemency procedure, then the trial court should have applied the holding of the Ohio Supreme Court in *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 644 N.E.2d 369. Pursuant to *Maurer,* the appellant's only remedy would have been for the trial court to declare that appellees had no authority to prescribe any procedural prerequisites concerning commutations.

■ The following three issues were before the court in *Maurer:*

"(1) Does Section 11, Article III of the Ohio Constitution authorize the General Assembly to prescribe procedural prerequisites to the exercise of the Governor's clemency power? (2) If so, does the General Assembly have the authority to prescribe procedural prerequisites for commutations as well as pardons? and (3) Has the General Assembly in fact imposed procedural prerequisites upon the Governor's clemency power?" *Id.* at 517, 644 N.E.2d at 373.

During the time period relevant to the facts in both *Maurer* and this case, Section 11, Article III, Ohio Constitution, provided the authority for the Governor's clemency power as follows:

"He [the Governor] shall have power, after conviction, to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and cases of impeachment, upon such conditions as he may think proper; subject, however,

to such regulations, as to the manner of applying *pardons*, as may be prescribed by law."[2]  (Emphasis added.)

The court interpreted the language of the "subject to" clause as providing the General Assembly with the authority to establish a regulatory scheme which included prerequisites to the exercise of the Governor's power to grant pardons.

The court next examined the question of whether Section 11, Article III, Ohio Constitution, extended the authority of the General Assembly to prescribe procedural regulations with regard to other types of clemency.  As the court noted, the first sentence of Section 11 provides the Governor with the power to grant *three* different types of clemency:  reprieves, commutations, and pardons. The court noted further that Section 11 is equally clear in that it provides the General Assembly with the authority to regulate the application process for only *one* type of clemency:  pardons.

Thereafter, the court set out to determine whether the General Assembly had, in fact, prescribed any regulations concerning the application process for clemency which interfered with the Governor's clemency power.  The court looked at R.C. 2967.07, which provides as follows:

"All applications for pardon, commutation of sentence, or reprieve shall be made in writing to the adult parole authority.  Upon the filing of such application, or when directed by the governor in any case, a thorough investigation into the propriety of granting a pardon, commutation, or reprieve shall be made by the authority, which shall report in writing to the governor a brief statement of the facts in the case, together with the recommendation of the authority for or against the granting of a pardon, commutation, or reprieve, the grounds therefor and the records or minutes relating to the case."

The court then stated as follows:

"As we determined above, Section 11, Article III of the Ohio Constitution authorizes the General Assembly to regulate the application process only with respect to pardons, and not commutations or reprieves. *Because the grant of the*

---

2.  Section 11, Article III, Ohio Constitution, has been amended, effective January 1, 1996, and now provides as follows:  "The Governor shall have power, after conviction, to grant reprieves, *commutations*, and pardons, for all crimes and offenses, except treason and cases of impeachment, upon such conditions as the Governor may think proper; subject, however, to such regulations, as to the manner of applying for *commutations* and pardons, as may be prescribed by law."  (Emphasis added.)  This change has no impact on the present case because, "[a]s was said by Fuller, C.J., in *Shreveport v. Cole* [1889], 129 U.S. 36, 9 S.Ct. 210, 32 L.Ed. 589: 'Constitutions as well as statutes are construed to operate prospectively only, unless, on the face of the instrument or enactment, the contrary intention is manifest beyond reasonable question.' " *Buckeye Churn Co. v. Abbott* (1926), 115 Ohio St. 152, 155, 152 N.E. 391, 392.  This amendment shows no language from which retroactive character can be established, and thus its operation is prospective.

*clemency power with respect to commutations and reprieves is unfettered, any regulation by the General Assembly that acts to limit the Governor's power to grant commutations or reprieves is a violation of the Constitution.* To the extent that the regulatory scheme under R.C. Chapter 2967 places limits or preconditions on the Governor's power to grant commutations or reprieves, it is unconstitutional and void. We are particularly concerned with R.C. 2967.07. As we note below, the General Assembly in R.C. 2967.07 has provided a regulatory prerequisite to the granting of commutations, as well as pardons and reprieves: a clemency application must be made to and acted on by the Adult Parole Authority before the Governor may grant clemency. We do not question the wisdom of this legislation, but it has no constitutional underpinnings beyond pardons." (Emphasis added.) *Maurer, supra,* 71 Ohio St.3d at 523, 644 N.E.2d at 377.

The court went on to conclude that the statute's references to commutations and reprieves met the test for severability provided in *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28, 33, and found that R.C. 2967.07 provides a regulatory scheme that imposes the same regulation upon the three different types of clemency. The court held that those portions of R.C. 2967.07 that attempted to regulate commutations and reprieves were unconstitutional and could be severed from the rest of R.C. 2967.07. Therefore, the court held that, pursuant to the Ohio Constitution, R.C. 2967.07 may regulate the application process for pardons only. In the present case, it is undisputed that appellant did not apply for a pardon, reprieve, or commutation pursuant to R.C. 2967.07. Instead, the APA began its investigation as to whether to recommend that appellant's sentence be commuted pursuant to R.C. 2967.03, which provides in part as follows:

"The adult parole authority may exercise its functions and duties in relation to the pardon, commutation, or reprieve of a convict upon direction of the governor or upon its own initiative, and in relation to the parole of a prisoner eligible for parole, upon the initiative of the head of the institution wherein the prisoner is confined, or upon its own initiative. * * * The authority may investigate and examine, or cause the investigation and examination of, prisoners confined in state penal or reformatory institutions concerning their conduct therein, their mental and moral qualities and characteristics, their knowledge of a trade or profession, their former means of livelihood, their family relationships, and any other matters affecting their fitness to be at liberty without being a threat to society.

"The authority may recommend to the governor the pardon, commutation, or reprieve of sentence of any convict or prisoner, or grant a parole to any prisoner, if in its judgment there is reasonable ground to believe that, if the convict is

granted a pardon, commutation, or reprieve, or the prisoner is paroled, such action would further the interest of justice and be consistent with the welfare and security of society."

Therefore, if a declaratory judgment action could have been used to challenge the clemency procedure, the only issue would have been whether the General Assembly had the authority to prescribe procedural prerequisites prior to the Governor's being allowed to commute a prisoner's sentence when the prisoner has not applied for commutation of his sentence. As the Supreme Court held in *Maurer*, Section 11, Article III, Ohio Constitution, authorizes the General Assembly to prescribe procedural regulations as to the application process for pardons only. The only limitation that Section 11 places upon the Governor's power to commute a prisoner's sentence is that he exercise that power "after conviction" and for all crimes and offenses, "except treason and cases of impeachment."

In the same way that R.C. 2967.07 attempted to place restrictions on the Governor's authority to grant commutations of sentences upon application, R.C. 2967.03 attempts to place procedural requirements upon the Governor's power to commute a prisoner's sentence when the prisoner has not made an application. For the same reasons that the Ohio Supreme Court found R.C. 2967.07 to be unconstitutional as it applied to the General Assembly's attempt to regulate the Governor's authority over commutations, R.C. 2967.03 makes the same attempt and likewise would be found unconstitutional.

█ Therefore, if this court accepted that appellant's declaratory judgment action was the proper way to attack the clemency procedure, the trial court should have found that the clemency procedure was unconstitutional as applied to appellant. However, there is no need to remand this matter to the trial court for consideration of any due process issues. The clemency procedure simply could not be applied to appellant, or anyone else, before January 1996, regardless of whether or not it should have been promulgated as a rule.

Based on the foregoing, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed for the reasons stated in this opinion.

*Judgment affirmed.*

DESHLER, J., concurs.

TYACK, J., dissents.

TYACK, Judge, dissenting.

Since I believe that the Ohio Adult Parole Authority adopted a set of rules when it adopted the Death Penalty Clemency Procedure, I believe the case was maintainable as a declaratory judgment action. Since we do not reverse the trial court's dismissal of that action, I respectfully dissent.

The pertinent definition is contained in R.C. 119.01(C):

" 'Rule' means any rule, regulation, or standard, having a general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency, and includes any appendix to a rule. 'Rule' does not include an internal management rule of an agency unless the internal management rule affects private rights and does not include any guideline adopted pursuant to section 3301.0714 of the Revised Code."

The clemency procedure was clearly intended to have a general and uniform operation. At Section II, entitled "PURPOSE," the clemency procedure states:

"The purpose of this policy is to establish a standard procedure for handling applications for clemency in death penalty cases and for review of death penalty cases where no application has been filed."

The clemency procedure clearly acknowledges that it is intended to govern the conduct of persons other than employees of the state of Ohio when it states:

"III. *APPLICABILITY*

"This policy applies to the Ohio Parole Board and other employees of the Ohio Department of Rehabilitation and Correction, who are responsible for collecting and providing information, scheduling hearings, providing notices, etc., and to prisoners under sentence of death and the attorneys representing them."

Not explicitly acknowledged in Section III is the fact the hearings potentially involve several other persons. This is clear, however, from a portion of Section IV, entitled "PROCEDURE," which reads at B.3:

"The parole board shall send any required notices to the sentencing court, the prosecutor, and the victim's family or representative."

Section IV.B.3 is to be read in conjunction with Section IV.D.3, which reads:

"Attendance by others at the hearing is at the sole discretion of the parole chair."

Thus, the clemency procedure also governs the ability of the sentencing court, the prosecuting attorney, and the victim's family to appear and be heard at the clemency hearing before the Ohio Parole Board.

Given the broad range of people who are affected by the clemency procedure, I simply do not believe that the clemency procedure can be an internal manage-

ment rule. Even if by some stretch of the imagination the clemency procedure could be construed as an internal management rule, the procedure clearly affects private rights, not the least of which is the right of the victim's family to express to the parole board its feelings about the appropriate recommendation to be made to the Governor of Ohio.

Good social policy strongly supports treating a clemency procedure as a set of rules. Rules are adopted through a detailed course that is well defined. During the course of adoption, the public and the legislature both have an opportunity for input. I seriously doubt that after such a careful process we would see a clemency procedure that allows the parole board's chairwoman or chairman for no discernible reason to bar a victim's family and the appropriate prosecuting attorney from personal presence at the clemency hearing.

For all the above reasons, I believe that the clemency procedure is and should be considered a set of rules.

Once the fact that the clemency procedure is a set of rules is acknowledged, then the legality of the adoption of the procedure can be contested through a declaratory judgment action in the courts. I do not view *Wise v. Ohio Dept. of Rehab. & Corr.* (1992), 84 Ohio App.3d 11, 616 N.E.2d 251, as dictating a contrary result since, to me, the core holding in the *Wise* case was our finding the parole guidelines utilized by the Ohio Parole Board were not to be rules. Once we made that determination, then Wise's declaratory judgment action clearly was to be dismissed.

I believe this declaratory judgment action filed on behalf of Alton Coleman stated a claim for relief such that the case was not subject to a valid motion to dismiss. Since the trial court did sustain a motion to dismiss, I believe the trial court erred. I would reverse that dismissal and remand the case for further appropriate proceedings. Since a majority of this court does not do so, I respectfully dissent.