ON OBJECTIONS TO THE MAGISTRATE'S DECISION DECISION
{¶ 1} Relator, Andrew Perry, filed this original action in mandamus. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. The magistrate converted respondent's motion to dismiss to a motion for summary judgment. The magistrate gave proper notice to each party that the motion would be treated as one for summary judgment, and set a deadline for submitting evidence.
 {¶ 2} The magistrate declared that the documents attached to relator's complaint would be viewed as the proposed stipulated evidence unless relator notified the court otherwise by a certain date. Relator did not object to the admission of the five documents attached to his complaint, and respondent agreed to the admission of four of those five documents. Relator never filed a memorandum in opposition to respondent's motion to dismiss/motion for summary judgment. On March 30, 2004, the magistrate rendered a decision, including findings of fact and conclusions of law, wherein the magistrate recommended denial of the writ. (Attached as Appendix A.) Relator timely filed objections to the magistrate's decision, which objections are now before the court.
 {¶ 3} In his objections, relator argues that the magistrate failed to address whether respondent may permissibly consider two separate convictions, for purposes of parole, when the sentences for those convictions were ordered to be served concurrently. We disagree, and find, upon a review of the magistrate's decision, that the magistrate fully considered this question, correctly answering the same in the affirmative.
 {¶ 4} Relator further argues that the magistrate misconstrued the complaint. He argues that his complaint sought to point out that respondent's use of offense categories results in an unlawful "increase" in relator's minimum sentence, but the magistrate construed the complaint as a request for early release. Again, we disagree, and conclude that the magistrate correctly construed relator's complaint, and appropriately determined that respondent's use of the Aggregate Guideline Range in no way alters the judgment of the sentencing court as to the minimum time relator was to serve.
 {¶ 5} Next, relator argues that he did not need to present any extrinsic evidence of a parole-related feature of his plea agreement, since, regardless of the specifics of his plea agreement, the application of the Aggregate Guidelines violated the express terms of the agreement as set forth in the sentencing entry. However, the magistrate correctly pointed out that the sentencing court's entry makes no mention of parole. Thus, absent some evidence that the sentencing entry incorrectly reflects the true terms of the plea agreement, relator has not demonstrated that respondent had a clear legal duty to do anything other than it did, or that respondent has in any way breached the terms of relator's plea agreement.
 {¶ 6} Finally, relator argues that the magistrate erred in concluding that respondent is not legally obligated to award additional "good time" credit to relator, given that he has already had his minimum sentence reduced by at least 30 percent, and that he was given his first parole hearing in February 2000, which is fully compliant with former R.C. 2967.19. Relator appears to argue that he is due additional "good time" credit because respondent found, at relator's 2003 Layne hearing, that relator had taken advantage of programming and has a good institutional record. We disagree. Former R.C. 2967.19 provides for "good time" credit solely for purposes of acceleration of the date that an offender is first eligible for parole; the statute does not provide for additional "good time" credit to be earned or awarded thereafter, regardless of an offender's institutional record.
 {¶ 7} After an examination of the magistrate's decision, an independent review pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections for the foregoing reasons. We adopt the magistrate's findings of fact and conclusions of law as our own, grant respondent's motion to dismiss/motion for summary judgment, and deny the request for a writ of mandamus.
Motion to dismiss/motion for summary judgment granted;objections overruled; writ of mandamus denied.
Bowman and Brown, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Andrew Perry, : Relator, : v. : No. 03AP-1277 The Ohio Adult Parole Authority et al., : (REGULAR CALENDAR) Respondents. :
 MAGISTRATE'S DECISION Rendered on March 30, 2004 Andrew Perry, pro se.
Jim Petro, Attorney General, and John H. Jones, for respondents.
 IN MANDAMUS ON MOTION FOR SUMMARY JUDGMENT {¶ 8} In this original action in mandamus, relator, Andrew Perry, asks the court to issue a writ compelling respondent, Ohio Adult Parole Authority ("APA"), to grant a new parole hearing without applying the parole guidelines and to apply the proper credit for "good time." As set forth more fully below, the magistrate recommends that the court grant the motion to dismiss filed by respondent on January 26, 2004, which has been converted to a motion for summary judgment.
Allegations of Fact in the Complaint, Documents Attached tothe Complaint, and Procedural History in Mandamus:
 {¶ 9} 1. According to the complaint, relator was a defendant in a criminal action in the Cuyahoga County Court of Common Pleas. He entered a plea bargain agreement with the county prosecutor under which he pled guilty to one count each of involuntary manslaughter and one count of kidnapping. He states that, based on the agreement, the trial court sentenced him to imprisonment for 7 years to 25 years on each count, with the two sentences to run concurrently.
 {¶ 10} 2. Relator alleges that he had a parole hearing in 2002. A copy of the resulting order is attached to the complaint.
 {¶ 11} 3. On September 30, 2003, relator appeared before the APA for a rehearing pursuant to State ex rel. Layne v. Ohio AdultParole Auth., 97 Ohio St.3d 456, 2002-Ohio-6719. Relator provided a copy of the APA's order from that hearing, attached to the complaint.
 {¶ 12} 4. Relator alleges that the APA applied the Aggregate Guideline Range, which caused an increase in the minimum term that he was ordered to serve.
 {¶ 13} 5. On January 26, 2004, the APA filed a motion to dismiss the complaint in mandamus under Civ.R. 12(B)(6). Because the APA's motion to dismiss appeared to be affirmatively based on documents attached to the complaint, the magistrate ordered on January 29, 2004, that the motion to dismiss would be construed as a "motion to dismiss or for summary judgment." After setting a deadline for submitting evidence, pursuant to Civ.R. 56, the magistrate stated that the documents attached to relator's complaint would be viewed as proposed stipulated evidence unless relator notified the court otherwise, by a certain date, and that respondent could thereafter notify the court as to which documents it agreed would be admitted as stipulated evidence.
 {¶ 14} 6. Five documents were attached to the complaint as follows:
A. Appendix A is a xeroxed copy of a certified copy of an August 1995 journal entry from the Cuyahoga County Court of Common Pleas in case number CR-319359, stating that relator pleaded guily to involuntary manslaughter and kidnapping, and sentencing relator to prison "for a term of (7) seven years to (25) twenty-five years on each count * * * to run concurrent[ly]."
B. Appendix B is a page from the APA's guidelines showing sections 202 through 204(C)(2).
C. Appendix C consists of two pages, the first of which appears to be taken from an older version of the parole guidelines, and a second page that shows sections 201 through 204 of the guidelines.
D. Appendix D is a copy of a Parole Board Decision for relator's hearing in February 2000. The offense category was set at Category 13, based in part on an offense for which relator had not been convicted. The guideline range was "300 — LIFE." Total time served including jail time credit was listed as 58 months, and the order notes that relator had two significant disciplinary infractions in prison. On the second page, almost all of the handwriting is not legible.
E. Appendix E is a copy of relator's Parole Board Decision Sheet pursuant to a hearing on September 20, 2003. This decision shows a modification of the offense category. Based on the actual offenses of conviction — involuntary manslaughter in the course of a kidnapping — the APA determined that the offense behavior was Category 11. Accordingly, in section 3 of the form, the APA determined that the guideline range was "180-240 months."
 {¶ 15} In section 4, the total time served was listed as 98 months, based on 97 months of prison time and 1 month of jail time credit. In section 5, the order shows zero infractions resulting in new convictions for criminal conduct while in custody. In section 6, the APA stated that the "Class II Behavior Guideline Range" was zero months, based on zero disciplinary infractions. Accordingly, in section 7, the Aggregate Guideline Range (the total of sections 3, 5 and 6) was determined to be "180-240 months."
 {¶ 16} In section 9 of this September 2003 decision, the APA concluded that relator should serve 76 months before his next parole hearing. The APA commented as follows:
* * * COBR determined that inmate is not yet suitable for release. His role in the offense was somewhat minor compared to the role of his co-defendants. He has availed himself of appropriate programming and has good institutional conduct.
Credit for "outstanding program achievement" was not awarded, and the final recommendation was as follows: "Continue 1-2010 + CON." In addition, the form states that release on parole is "contingent on good institution[al] behavior and/or reduction from maximum security status." (Appendix E to the Complaint.)
 {¶ 17} 7. Relator did not object to the admission of the five attachments to his complaint, and the APA agreed to the admission of the following as evidence in mandamus: Appendices A, B, D, and E. Neither party submitted any additional evidence under Civ.R. 56.
Arguments Raised in the Complaint:
 {¶ 18} Because relator has not filed a memorandum opposing the motion for summary judgment/dismissal, the magistrate turns to the arguments presented in the complaint. First, relator contends that he was entitled to parole consideration at the end of seven years, which was the minimum sentence imposed by the court. In this argument, he relies on R.C. 2967.13(A), which states that a prisoner serving an indefinite term of imprisonment for a felony "becomes eligible for parole at the expiration of his minimum term."
 {¶ 19} Second, relator asserts that the Aggregate Guideline Range used by the APA is contrary to R.C. 2967.13(A). Third, he argues that the APA's use of the Aggregate Guideline Range violates Layne, supra. Fourth, relator contends that the APA's application of the Aggregate Guideline Range in his case was contrary to the plea agreement approved by the trial court. Fifth, relator contends that the APA's application of the Aggregate Guideline Range has, in effect, caused his sentences to run consecutively rather than concurrently, which is contrary to the sentence imposed by the trial court.
 {¶ 20} Sixth, relator argues that, during his initial parole hearing, the APA was obligated to award good-time credit that would have resulted in a 30 percent reduction of the minimum sentence of seven years. He relies on R.C. 2967.19. Seventh, relator argues that the APA's minutes of the initial parole hearing must reflect that the date of the initial hearing was properly advanced based on the prisoner's "good time" credits.
Conclusions of Law:
 {¶ 21} For a writ of mandamus to issue, the relator must allege and prove the following: (1) that he has a clear legal right to the requested relief; (2) that respondent has a clear legal duty to perform the requested acts; and (3) that he has no adequate remedy at law. E.g., State ex rel. Berger v. McMonagle
(1983), 6 Ohio St.3d 28.
 {¶ 22} This matter is before the court upon respondent's motion for summary judgment. In considering whether to grant the motion for summary judgment, the magistrate applies Civ.R. 56, which states that summary judgment shall be granted when there is no genuine issue as to any material fact and respondent is entitled to judgment as a matter of law. Civ.R. 56 provides that summary judgment is appropriate where the court, construing the evidence most strongly in favor of the nonmoving party (relator herein), concludes that reasonable minds can come to but one conclusion, which is adverse to relator.
 {¶ 23} Relator and respondent have stipulated that four documents attached to the complaint as appendices A, B, D, and E shall serve as stipulated evidence in this action: a copy of the trial court's judgment entry described above, a copy of sections 202 through 204(C)(2) of the APA's parole guidelines, a copy of the APA's decision in February 2000 as described above, and a copy of the APA's decision in September 2003, also described above.
 {¶ 24} The evidence shows that relator was sentenced in August 1995 for two offenses, involuntary manslaughter and kidnapping. The trial court ordered him to serve at least seven years, with a maximum of 25 years. He had his initial parole hearing in February 2000, at which time parole was denied. After the Ohio Supreme Court issued its decision in Layne, supra, relator was given a Layne rehearing in September 2003. At that time, the APA changed the offense category from 13 to 11. Accordingly, it adjusted the aggregate guideline range from "300 — LIFE" to a lower range of "180-240" months.
 {¶ 25} First, the magistrate addresses the decision inLayne. The Supreme Court of Ohio held that the APA, when considering early release on parole, is limited to considering only the offense or offenses for which the inmate was actually convicted and may not consider offenses for which the inmate was merely arrested, charged, or indicted.
 {¶ 26} In the present action, the evidence shows that the initial parole determination in 2000 was based in part on criminal activity for which relator was not convicted. However, after Layne was decided, the APA afforded relator a new hearing. Pursuant to this rehearing in 2003, the APA issued a determination in which the offense category was adjusted to Category 11, two levels lower than initially determined. In addition, the guideline range was adjusted downward substantially: the new range was "180-240 months" rather than "300 — LIFE" as initially determined.
 {¶ 27} The magistrate concludes that there is no genuine issue of material fact in mandamus. Further, even where all reasonable inferences are made in relator's favor, reasonable minds could reach but one conclusion: that the APA cured its violation of Layne principles by giving relator a new hearing and adjusting the offense category and guideline range. Therefore, because the APA ultimately complied with its legal duty under Layne, the court should not issue a writ ordering compliance.
 {¶ 28} Relator's challenges to the use of the Aggregate Guideline Range are interrelated and will be discussed together. First, relator argues that use of the parole guidelines caused a breach of his plea agreement. He alleges in the complaint that the trial court's "journal entry of sentencing envinces [sic] he was entitled to parole release consideration based on the agreed to minimum sentence that was imposed by the trial court." However, the journal entry contains no mention of parole consideration. See Papp v. Ohio Adult Parole Auth., Franklin App. No. 01AP-892, 2002-Ohio-199. The entry merely states that relator is convicted of two offenses and will serve at least seven years in prison but no more than 25 years, for committing a kidnapping and involuntary manslaughter. Relator provides no affidavit from his trial counsel as to the plea agreement nor other evidence to show a special agreement that the APA would refrain from applying the usual parole guidelines for prisoners who are serving concurrent sentences for two crimes. Accordingly, the magistrate concludes that relator cannot prevail on his claim that respondent breached the plea agreement. See, generally,Papp.
 {¶ 29} Second, relator contends that the APA, by considering that there were two offenses when determining whether to grant early release on parole, has, in effect, caused his concurrent sentences to run consecutively, contrary to the trial court's judgment. Viewing the evidence most favorably for relator, the magistrate nonetheless finds no indication that the state is requiring relator to serve his two sentences consecutively. The parties agree that relator was sentenced to two terms of 7 to 25 years to run concurrently. Therefore, if relator eventually serves a period of incarceration that is more than 7 years but less than 25 years, he will have served an amount of time within the term imposed by the trial court.
 {¶ 30} Relator does not have a right to be released before serving his full sentence, and the APA's task is to determine, based on the nature of the offenses for which sentence was imposed and other factors, whether relator should serve an amount of time closer to the minimum or the maximum. Here, the APA concluded in 2003 that relator should serve a total of 180 to 240 months (15 to 20 years), which is inside the boundaries set by the trial court for concurrent running of the two terms of incarceration.
 {¶ 31} Under a consecutive sentence, relator would be required to serve a minimum of 14 years and a maximum of 50 years, and the magistrate finds no indication that the APA is requiring an incarceration of 14 to 50 years. It is true that there is some overlap in the amount of time to be served under concurrent sentencing and consecutive sentencing. For example, an incarceration of 18 years would be within the permissible time for concurrent terms of imprisonment (7 to 25 years) as well as within the permissible time for consecutive terms (14 to 50 years). However, the mere fact that the APA in 2003 ordered that relator should serve 15 to 20 years of an indefinite sentence of 7 to 25 years does not prove that the APA is treating the two sentences as consecutive. It is clear that incarceration for 15 to 20 years would be within the amount of time for concurrent running of the sentences.
 {¶ 32} Therefore, the APA's consideration of all offenses of conviction for purposes of parole consideration was not tantamount to running the terms of imprisonment consecutively. Moreover, an application of the parole guidelines does not violate Layne as long as the APA has limited its consideration to the offenses of conviction. Here, the parole decision in 2003 was based solely on the offenses of conviction, and, therefore, the application of the guidelines did not violate Layne.
 {¶ 33} In addition, the magistrate notes that the evidence shows that the calculation was accurately made under the guidelines. Relator readily admits that he was convicted of two offenses, involuntary manslaughter and kidnapping. Section 204 of the guidelines provide that, where the offense of conviction is involuntary manslaughter and where the manslaughter occurred in the course of a kidnapping, the offense category is 11, which is the category that the APA determined for relator.
 {¶ 34} Next, the magistrate addresses R.C. 2967.13(A). The current version of the statute became effective in July 1996 and applies to persons convicted for an offense committed on or after July 1, 1996. The prior version of R.C. 2967.13(A) provided as follows:
A prisoner serving a sentence of imprisonment for a felony for which an indefinite term of imprisonment is imposed becomes eligible for parole at the expiration of his minimum term, diminished as provided in sections 2967.19, 2967.193, and 5145.11
of the Revised Code.
 {¶ 35} R.C. 2967.19, which is referred to in the statute, was repealed in 1996 but was in effect when relator was sentenced. It provided for a diminution of the minimum sentence for good behavior, referred to as credit for "good time." Because a prisoner became eligible for parole at the expiration of his minimum sentence, a diminution of the minimum sentence for "good time" resulted in a reduction of the time that must be served before parole eligibility. Respondent concedes that former R.C.2967.19, which provided as follows, applies to relator in this case:
(A) * * * [A] person confined in a state correctional institution is entitled to a deduction from his minimum or definite sentence of thirty per cent of the sentence, prorated for each month of the sentence during which he faithfully has observed the rules of the institution. * * *
* * *
(F) A person who is confined in a state correctional institution shall not have his minimum or definite term diminished pursuant to any statute or rule other than this section and sections 2967.193 or 5145.11 of the Revised Code. The total of any diminution of sentence granted pursuant to division (A), (B), or (C) of this section shall not exceed, for any prisoner, thirty per cent of the minimum or definite sentence * * *. The cumulative total of any diminution of sentence granted pursuant to this section, any days of credit awarded pursuant to section 2967.193 of the Revised Code, and any diminution of sentence granted under section 5145.11 of the Revised Code shall not exceed, for any prisoner, one-third of the minimum or definite sentence * * *.
In at least two recent decisions, this court has discussed the "good time" statute and the legislative intent embodied in it. See Hill v. Wilkinson (Sept. 18, 2001), Franklin App. No. 01AP-403; State ex rel. Cannon v. Ohio Department of Rehab. Corr. (Oct. 31, 2003), Franklin App. No. 00AP-327. See, also,Harris v. Wilkinson, Franklin App. No. 01AP-598, 2001-Ohio-4052 (discussing the APA's guidelines in depth).
 {¶ 36} In Hill and Cannon, the court made clear that the "good time" credit applied only to reduce the minimum sentence and thus to advance the date of the first parole hearing. In other words, former R.C. 2967.19 permitted a reduction in the amount of time that a person would spend in prison before his initial parole consideration. In Cannon, the court explained that the date of the prisoner's first parole hearing had already been advanced by 30 percent due to his "good time" credit, and that the prisoner, after being denied parole at the initial hearing, could no longer accumulate "good time" credit.
 {¶ 37} In the present action, the stipulated evidence shows that, in August 1995, the trial court sentenced relator to a minimum of seven years in prison. Accordingly, under the law, he would ordinarily be entitled to an initial parole hearing upon serving seven years. The APA credited relator with one month of time served before incarceration in the state institution, and relator does not contend that the amount of time served was incorrectly calculated. Therefore, in the absence of "good time" credit or other credit, relator would have completed his seven-year minimum sentence in July 2002, and he could have expected his first parole hearing to take place by that time. In contrast, with the full "good time" credit of 30 percent of seven years, relator could expect his first parole consideration to take place in the spring of 2000.
 {¶ 38} The evidence shows that relator was given his first parole hearing in February 2000, which indicates that his minimum sentence was reduced by at least 30 percent. Thus, the evidence reflects that relator was credited with the highest amount of "good time" that was available under R.C. 2967.19. After that initial parole hearing, relator could no longer accumulate "good time" credit toward advancing his initial parole consideration. E.g., Cannon, supra. Therefore, the evidence clearly demonstrates that relator received the highest percentage of "good time" credit that was available under the statute and could not accumulate more.
 {¶ 39} Although there were flaws in the initial parole determination under the court's holding in Layne, supra, those flaws in the first hearing were corrected in a rehearing, and there is no evidence to suggest that the APA failed to hold the first hearing early enough to comply with the "good time" statute. With respect to relator's request that the minutes of the initial hearing must reflect the calculation of "good time" credit, the magistrate notes that, because relator received the maximum amount of "good time" credit available under the statute, an extraordinary writ to ensure that the calculation was written in the minutes is not warranted. In sum, the magistrate concludes that reasonable minds could reach but one conclusion with respect to the claims regarding "good time" credit, and that conclusion is that relator is not entitled to an extraordinary writ.
 {¶ 40} Based on the foregoing, the magistrate recommends that this court grant the January 26, 2004 motion for summary judgment and deny the requested writ of mandamus.
 /s/ P.A. Davison
P.A. DAVIDSON MAGISTRATE