[Cite as *Hinton v. Bur. of Sentence Computation*, 2018-Ohio-237.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Morris K. Hinton, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-187 |
| v. | : | (C.P.C. No. 16CV-6908) |
| Ohio Bureau of Sentence Computation, et al., | : | (ACCELERATED CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on January 23, 2018

**On brief:** *Morris K. Hinton,* pro se.

**On brief:** *Michael DeWine*, Attorney General, and *George Horváth*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Morris K. Hinton, appeals a decision and entry of the Franklin County Court of Common Pleas entered February 23, 2017, that granted summary judgment to defendants-appellees, Ohio Bureau of Sentence Computation ("OBSC") and Ohio Department of Rehabilitation & Correction ("ODRC") (collectively referred to as "appellees"). Because we agree with the trial court that credit for good behavior is deducted from the minimum but not the maximum measures of an indeterminate sentence, we overrule Hinton's assignment of error and affirm.

## I. PROCEDURAL POSTURE

{¶ 2} On December 19, 1994, following Hinton's guilty plea to two counts of rape, the Hamilton County Court of Common Pleas sentenced Hinton to two indefinite sentences of 9 to 25 years, to be served concurrently with each other. (Dec. 19, 1994 Jgmt. Entry case

No. B 945589, Ex. A attached to July 25, 2016 Compl.)  Over 21 years later, on July 25, 2016, Hinton filed a complaint for a declaratory judgment against appellees alleging that three years of credit for good behavior, having been applied to the minimum term of his sentence, should also have reduced his total sentence.  (Compl.)  Hinton's complaint included copies of correspondence between Hinton and appellees indicating that Hinton and appellees reached an impasse on the issue.  (Exs. B-C attached to Compl.)

{¶ 3}  Appellees answered, admitting most of the pertinent background facts, including that Hinton began serving his 9-to-25-year sentence on December 27, 1994. (Sept. 26, 2016 Answer at ¶ 1-5[1].)  On October 21, 2016, after filing its answer, appellees filed "DEFENDANTS' MOTION FOR LEAVE TO PROCEED, *INSTANTER* WITH THEIR MOTION FOR SUMMARY JUDGMENT AND IN THE ALTERNATE MOTION TO DISMISS WITH MOTION TO STRIKE PLAINTIFF'S EXHIBIT AT PAGE 13 OF PLAINTIFF'S COMPLAINT AS IRRELEVANT."  (Emphasis sic.) (Oct. 21, 2016 Mot. for Summ. Jgmt.)  Essentially, appellees' motion had the potential of being four motions in one–a motion to strike certain news articles attached to the complaint, a motion for summary judgment, a request that the trial court consider the motion for summary judgment, and, in the alternative, a motion to dismiss.

{¶ 4}  Exhibits were filed with the four-in-one motion, the trial court treated it as a summary judgment motion, and the parties addressed it in the record as a motion for summary judgment.  (Feb. 23, 2017 Decision in passim; Feb. 21, 2017 Entry at 2.)  The trial court did not need to give separate notice under Civ.R. 12(B)(6) that it was considering summary judgment, since an answer had been filed, and appellees' out-of-rule motion to dismiss was in the alternative to its motion for summary judgment.[2]

---

[1] In an apparent typographical error, appellees also admitted that Hinton's maximum sentence expired on December 13, 2009 (rather than 2019).  (Answer at ¶ 5.)

[2]  In addition, in an entry filed on February 21, 2017, the trial court stated that the parties in a conference on October 25, 2016, discussed the fact that the trial court would be considering the defendants' motion for summary judgment and any responses thereto.  (Feb. 21, 2017 Entry at 2.)  Also, Hinton filed a "VERIFIED MEMORANDUM IN OPPOSITION TO DEFENDANT'S [sic] MOTION FOR SUMMARY JUDGMENT," acknowledging that he was responding to a motion for summary judgment and not a motion to dismiss. (Nov. 7, 2016 Memo. in Opp.)

## II. JURISDICTION[3]

{¶ 5}

> "Whenever a want of jurisdiction is suggested by a court's examination of the case or otherwise, the court has a duty to consider it, for the court is powerless to act in the case without jurisdiction." *Id.*, citing *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 70, 518 N.E.2d 941, and *Wandling v. Ohio Dept. of Transp.* (1992), 78 Ohio App.3d 368, 371, 604 N.E.2d 825. As a result, "[e]ven though not asserted, lack of subject matter jurisdiction may be raised sua sponte, by the court at any stage of the proceedings." *Id.*, citing *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 238, 358 N.E.2d 536.

*Adams v. Cox*, 10th Dist. No. 09AP-684, 2010-Ohio-415, ¶ 19. It is incumbent on us to consider our jurisdiction, and in doing so we examine two issues: first, whether a final appealable order was before us when the motion to strike had not been ruled on by the trial court, and second, whether we can entertain an action such as Hinton has filed in declaratory judgment.

{¶ 6} The trial court did not rule on appellees' motion to strike before entering judgment for appellees. Under *CitiMortgage, Inc. v. Guinther*, 10th Dist. No. 12AP-654, 2013-Ohio-4014, ¶ 24, we previously held that a trial court's failure to rule on a motion to strike before granting summary judgment to the moving party is deemed to be a denial of the earlier filed motion. *See also FitWorks Holdings, L.L.C. v. Pitchford-El*, 8th Dist. No. 88634, 2007-Ohio-2517, ¶ 9 (noting "[i]t is well-settled that, when a motion is not ruled on, it is deemed to be denied"). Appellees' motion to strike is denied as by operation of law, leaving no matters unaddressed by the judgment of the trial court and a final appealable order capable of our review.

{¶ 7} As for jurisdiction over Hinton's claim in declaratory judgment, we review the nature of his claim, whether prior case law permits him to use declaratory judgment as a means to seek relief, and whether he has met the statutory requirements of declaratory judgment pursuant to R.C. 2721.12, which are jurisdictional. *Copeland v. Tracy*, 111 Ohio App.3d 648, 656 (10th Dist.1996).

---

[3] Although the record includes a number of filings and disputes between Hinton and appellees, we focus only on those relevant to the subject matter of this appeal.

### A.  The Nature of Hinton's Claim

{¶ 8}  Incarcerated, Hinton seeks an earlier maximum sentence release date for two counts of rape.  His indeterminate sentence predates the current statutory scheme for "good time" by several years.  He was sentenced in 1994, and on March 1, 1998, the Ohio Adult Parole Authority ("APA") changed the guideline system it used to consider inmates for parole.[4]  What was formerly referred to in law as "good time" as a consideration for early release is eliminated under the new guidelines and is now presumed by the requirements of the statute.  *Ankrom v. Hageman*, 10th Dist. No. 04AP-984, 2005-Ohio-1546.

### B.  Case Law Treatment of Declaratory Judgment for "Good Time" Claims

{¶ 9}  In *Hageman,* the inmate appellants asserted among other claims that the APA did not promulgate new guidelines according to the Administrative Procedure Act.  *Id.* at ¶ 7.  This Court held that parole guidelines are not a rule and do not fall under the purview of the declaratory judgment statute.  *Id.* at ¶ 36, citing *Wise v. Ohio Dept. of Rehab. & Corr.*, 84 Ohio App.3d 11 (10th Dist.1992) ("Thus, we concluded in *Wise* that a declaratory judgment action is not the appropriate remedy to preclude utilization of a

---

[4] The revised statute sets up a grid or matrix as guidelines for the APA:

> First, the parole board assigns a risk score. The risk score represents an inmate's risk of recidivism and is calculated by analyzing several objective factors, including an inmate's prior convictions, incarcerations, age, and prior parole and probation history. These factors are given numerical values that are added to arrive at a number between zero and eight, with eight indicating the greatest risk of recidivism. These risk scores are similar to the risk scores used in the matrix. Second, the parole board assigns an offense category. The offense category is determined by analyzing the conduct leading to the inmate's current incarceration based on the offense of conviction. The offense is then placed in categories numbered one through 13, with 13 being the most serious offense. The offense category is a new creation and was not used in the matrix. Third, the parole board evaluates the risk score and offense category. The risk score and offense category are utilized in a guideline-grid chart to suggest a range of months the inmate should serve before being paroled. The horizontal axis of the grid lists the eight risk of recidivism factors, while the vertical axis of the grid lists the 13 categories of offenses. After locating the category of offense along the vertical axis and then locating the risk score along the horizontal axis, the parole board then finds the intersection of these categories on the grid, which suggests a range of months to be served by the inmate before becoming eligible for parole. Fourth, the parole board decides whether to follow or depart from the suggestion of the guidelines. If it chooses to follow the guidelines, the board picks a period within the suggested range that the offender should serve. "Good time" as a consideration is eliminated under the new guidelines and is now presumed.

*Ankrom v. Hageman*, 10th Dist. No. 04AP-984, 2005-Ohio-1546, ¶ 4.

rule not properly adopted in accordance with statutory procedures. We later followed *Wise* to find that declaratory judgment is not the proper method to contest the utilization of a rule regarding the APA's death penalty clemency procedure that was not properly promulgated. *See Coleman v. Ohio Adult Parole Auth.* (1996), 115 Ohio App.3d 212, 215, 685 N.E.2d 241. Thus, pursuant to *Wise* and *Coleman*, appellees would be precluded from using a declaratory judgment action to challenge the promulgation of the guidelines.").

{¶ 10} But Hinton, who was sentenced before March 1, 1998, does not challenge how guidelines were promulgated, and his claim does not concern clemency for the death penalty. Rather, he challenges appellees' application of sentence reduction guidelines to his sentences, claiming in his sole assignment of error prejudice to his "liberty interests." (Hinton's Brief at ii.) He does not challenge the underlying judgment of the sentencing court.

{¶ 11} We previously stated that collateral civil attacks by an inmate who filed an original action for a writ of mandamus against ODRC and the chief of OBSC seeking recalculation of his end of sentence date was a civil action and a collateral civil attack on the judgment. *State ex rel. McGlown v. Mohr*, 10th Dist. No. 14AP-478, 2015-Ohio-1554, ¶ 1, 6. In *McGlown* at ¶ 6, we cited *State v. Reynolds*, 79 Ohio St.3d 158 (1997), syllabus ("Where a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21.").[5]

{¶ 12} Because McGlown's action had been filed in mandamus it could be treated as a postconviction motion for two reasons. First, R.C. 2731.02, authorizing writs of mandamus, permits courts to issue them simply on the information of the party beneficially interested. Second, under *Hageman*, we held that what are now essentially "good time" guidelines are not rules. Mandamus commands the performance of an act that the law specifically enjoins as a duty resulting from an office, trust, or station. R.C. 2731.01. Under

---

[5] A petition for postconviction relief pursuant to R.C. 2953.21 must demonstrate "a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2353.21(A)(1)(a). In *McGlown*, we did not reach this question, because we treated the mandamus petition as a postconviction motion and denied it for failure to satisfy R.C. 2969.25(A), requiring an affidavit detailing prior civil actions filed.

*Hageman* and in this context, mandamus, like declaratory judgment, cannot issue based on guidelines. *McGlown* does not apply to Hinton's appeal, and his action in declaratory judgment should not be converted to a postconviction motion as we did in *McGlown* for a prisoner's original mandamus action.

{¶ 13} The Eleventh District Court of Appeals has held, citing *Reynolds,* that determining whether a motion is for postconviction relief under R.C. 2953.21(A)(1) requires examining whether the petition is (1) filed subsequent to the defendant's direct appeal; (2) claims a denial of constitutional rights; (3) seeks to render the judgment void; and (4) requests vacation of the judgment and sentence. *State v. Archibald*, 11th Dist. No. 2014-L-005, 2014-Ohio-4314, ¶ 20, citing *Reynolds* at 160. Because the movant in *Archibald* did not seek to vacate his sentence or render it void, but rather to modify it from consecutive to concurrent, the Eleventh District found his motion should not be converted to a motion for postconviction relief. *Id.* at ¶ 20. Hinton does not seek to render a judgment void or to vacate his sentence. And his claim of prejudice to his liberty interests is in the absence of knowing whether he is entitled to a particular release date because of the application of "good time" credits under prior law. Under *Archibald*, his action should not be converted to a postconviction motion.

{¶ 14} The Second District Court of Appeals has also distinguished *Reynolds,* stating that *Reynolds* "must be narrowly construed" and reaches "*only* a motion * * * that fails to delineate specifically whether it is a postconviction release petition or a Crim.R. 32.1 motion," referring to poorly delineated motions as "irregular 'no-name' motions [that] must be categorized by a court in order for the court to know the criteria by which the motion should be judged." (Emphasis sic.) *State v. Spencer*, 2d Dist. No. 2006 CA 42, 2007-Ohio-2140, ¶ 11. *See also State v. Meadows*, 6th Dist. No. L-05-1321, 2006-Ohio-6183, ¶ 19.

> "*Reynolds* therefore does not obviate Crim.R. 32.1 postsentence motions. Instead, *Reynolds* sets forth a narrow rule of law limited to the context of that case." *State v. Bush* (2002), 96 Ohio St.3d 235, 237-38, 773 N.E.2d 522, 2002-Ohio-3993.

*Spencer* at ¶ 11. The Second District held that because the motion before the trial court was specifically filed pursuant to Crim.R. 32.1, the trial court erred in analyzing it as a petition for postconviction relief pursuant to R.C. 2953.21. *Id. See also Meadows* at ¶ 19.

{¶ 15} Hinton's action in the trial court is a specific action filed in declaratory judgment pursuant to R.C. 2721.12(A) with specific criteria by which it should be judged. Accordingly, we cannot apply *Reynolds* as we did in *McGlown.* We must conduct a jurisdictional review under R.C. 2721.12, which specifically requires that we determine whether "all persons who have or claim any interest that would be affected by the declaration [have been] made parties to the action or proceeding."

{¶ 16} We have previously held that a party that would be affected by the outcome of a case is a necessary party, and the failure to include them as a party constitutes a jurisdictional defect. *Copeland* at 656. The statutory elements of declaratory judgment are jurisdictional requirements and all affected parties must be named in the complaint. R.C. 2721.12; *Spencer v. Freight Handlers, Inc.,* 131 Ohio St.3d 316, 2012-Ohio-880, ¶ 19 ("We have recognized that naming proper parties and fulfilling service requirements are jurisdictional requirements in cases that involve statutes that clearly require such for jurisdiction.").

{¶ 17} We find no jurisdictional defects with Hinton's complaint.[6] He seeks a specific declaration of the rights of clearly delineated parties, all of whom are part of the action. Thus, we have jurisdiction to review his appeal of the trial court's denial of his claims in declaratory judgment.

{¶ 18} We do note at this juncture that "logic" would point to the need for Hinton to name in his complaint those persons who would seek to be heard about a potential earlier prison release date, such as the persons contemplated in what is known as Ohio's "Marsy's Law" taking effect 90 days after the November 7, 2017 election. However, this provision was not a part of the Ohio Constitution or in effect at the time Hinton filed his action. Thus we cannot say that Hinton was required to name his victim(s) such that they would have the right "to be heard in any public proceeding involving [his] release, plea, sentencing, disposition, or parole." Prospective Ohio Constitution, Article I, Section 10a (A)(3). But we cannot say this is the case for future declaratory judgment actions that may be brought by prisoners concerning their earlier release once "Marsy's Law" takes effect in Ohio.

---

[6] We also note since Hinton is not seeking that any state law or rule be held unconstitutional, there is no requirement under R.C. 2721.12(A) to serve the attorney general for him to be heard.

{¶ 19} Finally, and by way of analogy, we note that this Court previously has reviewed a prisoner's pro se declaratory judgment action contesting revocation of his parole. In that case, the trial court granted summary judgment to the State and the prisoner appealed. We did not convert the action to or treat it as a postconviction motion; we addressed it in declaratory judgment in the context of criminal post-sentencing matters. *Helton v. Ohio Adult Parole Auth.*, 10th Dist. No. 00AP-1108, 2001 Ohio App. LEXIS 2938, *7 (June 26, 2001). In *Helton*, we affirmed the trial court's denial of declaratory relief to the prisoner, analyzing that declaratory judgment requires that a party establish (1) a real controversy between adverse parties; (2) a controversy which is justiciable in character; and (3) a situation where speedy relief is necessary to preserve the rights of the parties. *Id.,* citing *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146, 148-49 (1992).

{¶ 20} En toto, we are convinced that Hinton's situation presents a narrow and limited application that allows us to review his claims in declaratory judgment pursuant to R.C. 2721.12. The straightforward legal issue Hinton places before us is whether the approximately three years of credit he earned for good behavior and participation in prison programs, should have reduced his maximum sentence as a logical consequence of reducing his minimum sentence.

## III. FACTS

{¶ 21} In granting appellees' motion for summary judgment, the trial court found that Hinton was not entitled to an interpretation of law that reduced his maximum sentence, even though his minimum sentence had been reduced so that he could appear before the APA earlier than he would have without his "good time."

{¶ 22} The facts in evidence before the trial court included an affidavit appellees attached to its somewhat unorthodox motion for summary judgment of an auditor for appellees, Kimberly Guitner. (Guitner Aff. at ¶ 3, Ex. A attached to Oct. 21, 2016 Memo. in Opp.) Guitner swore by affidavit that, based on documents attached as sub-exhibits A-1 through A-12, Hinton's sentence was a 9-year minimum and a 25-year maximum. *Id.* at ¶ 10. The expiration of the maximum, according to Guitner, was December 13, 2019. *Id.* at ¶ 11. Guitner explained that Hinton's good-time credit, earned credit, and jail-time credit (a total of 992 days) has been deducted from his minimum sentence. *Id.* at ¶ 14-16. As previously detailed in a letter to Hinton in January 2016, these credits reduce the minimum sentence so that the inmate is eligible for parole sooner. *Id.* at ¶ 22; *see also* Guitner Aff. at

Ex. A-12.  But earned and good-time credits, unlike jail-time credit, have no effect on the maximum possible sentence.  (Guitner Aff. at ¶ 22.)

{¶ 23} On November 7, 2016, Hinton filed a memorandum in opposition to appellees' motion.  (Nov. 7, 2016 Memo. in Opp.)  Hinton did not disagree with Guitner's calculation of his maximum-sentence expiration date based on his original sentence.  (Diagram, App'x at 11 attached to Nov. 7, 2016 Memo. in Opp.)  He argued that he had 16 years to serve following the completion of his minimum sentence of 9 years.  (Nov. 7, 2016 Memo. in Opp. at 5.)  Assuming that approximately three years were deducted from his minimum sentence for good-time, earned, and jail-time credits, Hinton reasoned once he served 16 years after his minimum 9-year sentence expired, he should have been freed.  *Id.* He argued the approximate three-year deduction of credits from his minimum sentence also applied in computing his maximum sentence.  *Id.*  He argued for a release date of December 13, 2016.  *Id.*

{¶ 24} The trial court granted appellees' motion for summary judgment, concluding that appellees' calculation of Hinton's release date, based on the relevant law and agreed facts, was correct.  (Feb. 23, 2017 Decision at 6-7.)  It also noted that even if Hinton's claims were construed as a motion for postconviction relief or a petition for a writ of mandamus, they would fail.  *Id.* at 4-5.

{¶ 25} Hinton now appeals.

## IV.  ASSIGNMENT OF ERROR

{¶ 26} Hinton presents a single assignment of error for review:

> The Court of Common Pleas Abused Its Discretion when It dismissed Appellant Morris K. Hinton's properly filed Complaint for Declaratory Judgment filed in accordance with Ohio's Declaratory Judgment Act, pursuant to O.R.C. Chap. 2721; causing prejudice to Appellant Hinton's liberty interests in Good Time credits earned and awarded under Ohio's pre-1996 Sentencing scheme in accordance with O.R.C. 2967.19(A) and 2967,193(A).

(Sic passim.)

## V.  DISCUSSION

{¶ 27} Ohio Rule of Civil Procedure 56(C) provides that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written

admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

When reviewing a trial court's decision on summary judgment, our review is de novo and we therefore apply the same standards as the trial court. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12; *Bonacorsi v. Wheeling & Lake Erie Ry.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

{¶ 28} In this case, there appears to be no dispute between the parties as to the relevant facts. Hinton was sentenced 9 to 25 years in prison, began serving that sentence on December 27, 1994, earned approximately three years of credit, and had a maximum sentence expiration date of December 13, 2019.

{¶ 29} Hinton was sentenced in December 1994. The versions of R.C. 2967.19 and 2967.193 that were in effect at the time of Hinton's sentencing and commission of the crimes for which sentencing occurred were enacted in 1994. Am.Sub.H.B. No. 571.[7] On review of sentencing issues, we are obliged pursuant to R.C. 1.58(B) to apply the statutes in effect at the time Hinton was sentenced. Thus, as to matters affecting Hinton's sentence, we apply the version of R.C. 2967.19 in effect at the time he was sentenced, which provided in relevant part as follows:

> [A] person confined in a state correctional institution is entitled to a deduction from his *minimum* * * * sentence of thirty per cent of the sentence, prorated for each month of the sentence during which he faithfully has observed the rules of the institution.

(Emphasis added.) R.C. 2967.19(A) (1994).

{¶ 30} There existed in the law at the time Hinton was sentenced an additional basis for minimum sentence reduction for participation in programming, pursuant to R.C. 2967.193, which provided in relevant part as follows:

> [A]ny person confined in a state correctional institution is entitled to earn days of credit as a deduction from his *minimum* * * * sentence as follows:
>
> (1) Two days shall be awarded to the prisoner and be deducted from his sentence for each full month during which he

---

[7] Reported online as 1993 Ohio HB 571.

productively participates in any of the following programs approved by the department of rehabilitation and correction:

(a) Academic or vocational education;

(b) Prison industries;

(c) Alcohol and drug abuse rehabilitation.

(Emphasis added.) R.C. 2967.193(A)(1) (1994).

{¶ 31} By the plain text of both former R.C. 2967.19(A) and former 2967.193(A)(1), deductions were from a prisoner's "minimum" sentence. The Supreme Court of Ohio has recognized that " '[t]he reasoning for [former R.C. 2967.19] reducing the minimum, rather than the maximum, sentence is * * * clear: the intent was to enable earlier *parole eligibility*, not to allow prisoners to unilaterally shorten their court-imposed sentence.' " (Emphasis sic.) *State ex rel. Vaughn v. Money*, 104 Ohio St.3d 322, 2004-Ohio-6561, ¶ 9, quoting *Gavrilla v. Leonard*, 4th Dist. No. 01CA2638, 2002-Ohio-6144, ¶ 12. The Supreme Court also agreed with this Court's holding that " '[f]ormer R.C. 2967.19 provides for "good time" credit solely for purposes of acceleration of the date that an offender is first eligible for parole.' " *Vaughn* at ¶ 10, quoting *State ex rel. Perry v. Ohio Adult Parole Auth.*, 10th Dist. No. 03AP-1277, 2004-Ohio-4039, ¶ 6.

{¶ 32} Accordingly, the credits earned by Hinton for his good behavior and participation in prison programs should have been (and were) deducted from his minimum sentence. However, though this had the effect of having the APA consider granting parole at an earlier point in time from his original sentencing date and thereby potentially reducing the *minimum* amount of time he had to serve, it did not alter the maximum time he could be required to serve under the trial court's original sentence. In reaching this conclusion, we take into consideration that "in the event of breaking his parole he might under certain circumstances be returned to the penitentiary to serve out the balance of his time." *O'Neill v. Thomas*, 123 Ohio St. 42, 49 (1930). That is, were good time permitted to reduce the maximum sentence, an inmate released upon having served the minimum (and reduced) sentence but who violates parole, could argue that he or she would not need to serve all of the remainder of the maximum sentence if denied further community supervision. Thus, in following *Vaughn,* neither we, nor the APA, are in a position to reduce a trial court's maximum sentence for indeterminate sentences.

{¶ 33} Hinton's contention that he was required to serve a minimum sentence of 9 years plus a possible 16 years so that reducing the 9-year sentence logically reduces the total sentence of 9 years plus 16 years misapprehends the nature of his indefinite sentence. *Vaughn.* His sentence was a maximum of 25 years, with a minimum of 9 before he became eligible for release. Reducing the 9 years made him eligible for release sooner. It did not affect his maximum sentence of 25 years.

## VI. CONCLUSION

{¶ 34} Hinton's sole assignment of error is overruled and the decision of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

TYACK and KLATT, JJ., concur.

_____