OPINION
{¶ 1} Harry Hageman, Margarette Ghee, Jim Bedra, Raymond E. Capots, Sandra A. Crockett, Jay R. Denton, Henry Grinner, William E. Hudson, Gloria R. Jones, Larry Matthews, Betty J. Mitchell, Patrick I. Mulligan, Constance M. Upper, and the Ohio Adult Parole Authority (collectively "the APA"), defendants-appellants/cross-appellees, appeal from a judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment to Douglas Ankrom, Keisha Harth, Michael Herrington, Herbert Lilly, Don Carlos Scott, Rufus N. Watkins, Terrance Davis, Michael C. Poluka, John R. Adams, Yohance A. Edmonds, Gerald L. Raines, Matthew Biddle, Tysen Porter, Donald A. Harman, David A. Cunningham, Duane Milliner, J.W. Walker, Christian Welborn, Kenneth S. Pigg, Coy Downey, Phillip E. Suttles, Baron K. Brand, Richard Mollick, Carolyn A. Miller, Steven R. Hall, Mark A. Williams, Robert E. Gearing, and all parole eligible Ohio prison inmates who pleaded guilty or no contest to lesser or fewer offenses than for which they were indicted, plaintiffs-appellees/cross-appellants. Appellees also appeal the trial court's judgment. Various organizations and groups have filed amicus curiae briefs.
 {¶ 2} Appellees are inmates who are serving indeterminate sentences under the criminal sentencing laws that were in effect before S.B. No. 2 became effective on July 1, 1996, which eliminated indeterminate sentences for all but the most serious offenses. Criminals sentenced under the pre-S.B. No. 2 laws, therefore, have their release dates determined by the APA, while the criminals sentenced under the post-S.B. No. 2 laws serve the exact sentences as imposed by the sentencing judges.
 {¶ 3} The current action involves the procedure used by the APA's parole board ("parole board") to determine the release dates for those criminals sentenced under the pre-S.B. No. 2 laws. In the 1980s, the APA developed and implemented a system to consider inmates for parole. Consideration under this system, dubbed "the matrix," centered on the felony level of the offenses of conviction, the sentence imposed by the court, and the inmate's risk of recidivism. The matrix consisted of two axes. The vertical axis listed the felony level of the offender's most serious offense of conviction. The horizontal axis listed a risk of recidivism score ranging from one to five, with five representing the greatest risk of re-offending. The intersection of this column and row produced one of five guidelines, which recommended whether an inmate should be paroled and, if not, how many months the inmate should serve until the next hearing.
 {¶ 4} On March 1, 1998, the APA changed the guideline system it used to consider inmates for parole. Under the new system ("guidelines"), the APA completes several steps to determine the period an inmate should serve before parole. First, the parole board assigns a risk score. The risk score represents an inmate's risk of recidivism and is calculated by analyzing several objective factors, including an inmate's prior convictions, incarcerations, age, and prior parole and probation history. These factors are given numerical values that are added to arrive at a number between zero and eight, with eight indicating the greatest risk of recidivism. These risk scores are similar to the risk scores used in the matrix. Second, the parole board assigns an offense category. The offense category is determined by analyzing the conduct leading to the inmate's current incarceration based on the offense of conviction. The offense is then placed in categories numbered one through 13, with 13 being the most serious offense. The offense category is a new creation and was not used in the matrix. Third, the parole board evaluates the risk score and offense category. The risk score and offense category are utilized in a guideline-grid chart to suggest a range of months the inmate should serve before being paroled. The horizontal axis of the grid lists the eight risk of recidivism factors, while the vertical axis of the grid lists the 13 categories of offenses. After locating the category of offense along the vertical axis and then locating the risk score along the horizontal axis, the parole board then finds the intersection of these categories on the grid, which suggests a range of months to be served by the inmate before becoming eligible for parole. Fourth, the parole board decides whether to follow or depart from the suggestion of the guidelines. If it chooses to follow the guidelines, the board picks a period within the suggested range that the offender should serve. "Good time" as a consideration is eliminated under the new guidelines and is now presumed.
 {¶ 5} On February 16, 2001, an Ohio prison inmate filed a pro se lawsuit against the APA. Thereafter, a public defender entered an appearance on behalf of the inmate and filed an amended complaint on March 26, 2001, adding more plaintiffs and defendants. The public defender then filed a motion for class certification on April 18, 2001, and the trial court granted the motion on June 13, 2001. The class consisted of all parole eligible Ohio prison inmates who pled guilty or no contest to lesser or fewer offenses than those for which they were indicted. On September 28, 2001, the trial court barred class members from commencing like actions against the APA or further prosecuting those initiated after June 13, 2001, and numerous suits that had already been filed were consolidated with the present action.
 {¶ 6} Many of the class members' causes of actions asserted they were convicted of or entered guilty pleas or no contest pleas to lesser and fewer crimes than those for which they were indicted but were assigned offense categories by the APA that did not correspond to their offenses of conviction, thereby violating their contractual rights under their plea agreements. On December 18, 2001, the Ohio Supreme Court issued a decision in Layne v. Ohio Adult Parole Authority, 97 Ohio St.3d 456,2002-Ohio-6719, in which the court found that, in any parole determination involving indeterminate sentencing, the APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction. As a result of Layne, the APA conducted new parole hearings for approximately 2,500 inmates, resulting in more than half of them being released. Accordingly, the contract claims relating to the issue decided directly in Layne were rendered moot, though some contract claims remained.
 {¶ 7} Other claims asserted in appellees' complaints also remained pending. Appellees asserted that the APA did not promulgate the new guidelines in accordance with the Administrative Procedure Act. Appellees further claimed that the APA's new guidelines violated the doctrine of separation of powers, their plea agreements, the constitutional guarantees of due process and equal protection, and the constitutional prohibitions against double jeopardy and ex post facto enhancement of punishment.
 {¶ 8} On March 31, 2003, the APA filed a motion for summary judgment. On January 16, 2004, appellees filed a motion for summary judgment. On August 31, 2004, the trial court granted appellees' motion for summary judgment. The court found the following: (1) that appellees were entitled by contract and statute to meaningful parole consideration that consists of true eligibility (rather than mere paper eligibility) and a parole hearing that complies with the policies and practices adopted by the APA after Layne; and (2) that the APA denies appellees contract rights and meaningful parole consideration when it (a) assigns a class member a guideline range that has a minimum term that exceeds the length of time a class member must serve before becoming eligible for parole under the law in effect at the time of the plea; (b) assigns a class member an offense category that does not correspond to the class member's offense of conviction or assigns a class member an offense category that nominally corresponds but that is elevated based upon the defendant's independent determination that the class member committed a distinct offense (such as kidnapping in connection with rape) for which he was not convicted; (c) "flops" a class member for more than five years; and (d) denies a class member a hearing or re-hearing that complies with defendant's post-Layne
practices and policies. The court ordered the APA to immediately re-hear and grant meaningful consideration for parole to any class member who had his or her plea agreement contracts breached in the manner described, and new hearings were to be granted to any class member who had not had a hearing since September 5, 2003, when the defendants implemented major post-Layne revisions to the factors to be considered in a release hearing. The APA appeals the judgment of the trial court, asserting the following assignments of error:
I. The trial court erred by granting Plaintiffs summary judgment based on the statutory right to meaningful parole consideration because no such claim was pled, because there were genuine questions of fact and because it relied on improper legal standards.
II. The trial court erred in granting Plaintiffs summary judgment on their contract claims, and in denying the APA judgment on the pleadings on that claim, because the Plaintiffs did not allege or prove that their plea agreements addressed parole.
III. The trial court erred in granting Plaintiffs summary judgment on their separation of powers claim, and by denying the APA summary judgment on that claim, because the APA's actions did not usurp judicial authority.
 {¶ 9} Appellees have filed a cross-appeal, asserting the following assignment of error:
The trial court erred in granting summary judgment to the APA on the administrative-rulemaking claim because the Guidelines are effectively rules with a general and uniform operation, and not merely discretionary guidelines.
 {¶ 10} The APA argues in its first assignment of error that the trial court erred in granting appellees summary judgment based on the statutory right to meaningful parole consideration because no such claim was pled, because there were genuine questions of fact, and because it relied on improper legal standards. Our review of the trial court's decision to grant summary judgment is de novo. See Helton v. Scioto Cty. Bd. ofCommrs. (1997), 123 Ohio App.3d 158, 162. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. See State ex rel. Grady v.State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183; Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 65-66.
 {¶ 11} The trial court found that the APA had denied appellees meaningful consideration under R.C. 2967.13, as construed by the Ohio Supreme Court in Layne, supra. The APA presents several reasons why the trial court erred in granting summary judgment on this basis. The APA initially asserts that Civ.R. 56 only authorizes summary judgment based on "a claim, counterclaim, or cross-claim." Civ.R. 56(A). The APA contends that, because appellees' second amended complaint nowhere citesLayne, R.C. 2967.13, or any other statute controlling the parole process, the trial court's decision rendered upon these bases was not based upon "a claim, counterclaim, or cross-claim," in contravention of Civ.R. 56(A). However, we find nowhere in the record below where the APA raised this issue. The APA's failure to raise this issue in the trial court constitutes a waiver of the error claimed. State v. Comen (1990),50 Ohio St.3d 206, 211. Generally, an appellate court will not consider any error that counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. State v. Campbell (1994), 69 Ohio St.3d 38, 40, quoting State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus. Notwithstanding, Civ.R. 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief. The party is not required to plead and is not held to specific legal theories of recovery but, rather, the facts alleged establish the right to relief. Illinois Controls, Inc. v. Langham
(1994), 70 Ohio St.3d 512, 525-526. The APA fails to cite any Ohio authority for the proposition that appellees were required to include case citations or statutes in their complaint under these circumstances, and we have found none. For these reasons, this argument is without merit.
 {¶ 12} The APA next argues that the trial court erred in granting appellees summary judgment based on the statutory right to meaningful parole consideration because there were genuine questions of fact remaining. The APA first contends that evidence establishing the detailed, individualized consideration given inmates raised genuine issues of material fact about the meaningfulness of its parole consideration. The APA contends that the following evidence indicates that the APA conducted multiple, detailed examinations of important aspects of each inmate's case: (1) each inmate's unique history was analyzed to determine the risk that he would violate the law or parole; (2) the details of each inmate's crime were analyzed to determine what specific conduct led to his incarceration; (3) a general range of incarceration was suggested based upon guidelines established using empirical studies, historical statewide patterns, and practices of other states and the federal government; (4) decision makers were free to accept or reject the recommendation of the guidelines based upon each inmate's unique facts and history; (5) if the guidelines' recommendation was followed, the precise amount of time to be served was tailored to particular inmate's unique circumstances and history; and (6) decisions were based on multiple reviews of inmate's history with the inmate's input. Thus, the APA claims, based upon this evidence, there was more than sufficient evidence to allow a jury to find that appellees were given meaningful parole consideration.
 {¶ 13} However, the APA's citation to these specific procedural measures that it believes demonstrates meaningful consideration of parole fails to address the crux of the trial court's decision; that is, despite these procedural actions taken by the APA, under some circumstances, these procedures still fail to constitute "meaningful consideration" as contemplated by the Ohio Supreme Court in Layne. Although this evidence outlining the APA's procedure may constitute "meaningful consideration" according to the APA's definition, the APA must demonstrate that its procedure constitutes "meaningful consideration" according to Layne. This argument, as set forth in the APA's brief, does not attempt to evaluate its procedures in the context of the Layne decision. The APA set forth facts that are undisputed without applying them to the legal question at issue: whether such procedures comply with the "meaningful consideration" requirements in Layne.
 {¶ 14} As explained above, the trial court's decision rested on its finding that the APA's procedures failed to demonstrate "meaningful consideration" for parole consistent with the dictates of Layne. InLayne, the Ohio Supreme Court held that the APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction. Id., at syllabus. In finding so, the court noted that, at the time that each plea agreement under review was entered into, R.C.2967.13(A) provided that a prisoner serving a sentence of imprisonment for a felony for which an indefinite term of imprisonment is imposed "becomes eligible for parole at the expiration of his minimum term." Id., at ¶ 26. The court believed that "eligible for parole" in former R.C. 2967.13(A) ought to mean something. Id., at ¶ 27. The court reasoned that inherent in this statutory language was the expectation that a criminal offender would receive meaningful consideration for parole. Id. The court believed that meaningful consideration for parole consisted of more than a parole hearing in which an inmate's offense of conviction is disregarded and parole eligibility is judged largely, if not entirely, on an offense category score that does not correspond to the offense or offenses of conviction set forth in the plea agreement. Id. Under the practice sanctioned by the APA's revised guidelines, concluded the court in Layne, the language of former R.C. 2967.13 that an inmate "becomes eligible for parole at the expiration of his minimum term" was rendered meaningless.
 {¶ 15} In the present case, the trial court found that there existed numerous situations in which inmates — although placed in the proper offense categories as required by Layne — were still being denied "meaningful consideration." The trial court first pointed out that some inmates under certain circumstances were being denied meaningful consideration for parole for unreasonable lengths of time after becoming eligible for parole. To illustrate such situations, the trial court and appellees cited the example of an inmate convicted of voluntary manslaughter who would have to serve at least seven years because the lowest possible range for parole eligibility on the guidelines chart is 84 to 120 months, despite the fact that a judge may have imposed a minimum sentence on that inmate for which statutory parole eligibility commenced in three and one-half years. Thus, although statutory eligibility commenced in three and one-half years for a minimum sentence of 5-25 years for voluntary manslaughter, such an inmate would not be eligible for parole for at least seven years under the guidelines. The trial court found that these results from the application of the guidelines rendered the trial court's sentence and the parole eligibility statute meaningless pursuant to Layne.
 {¶ 16} The APA responds to this finding by the trial court by arguing that: (1) it is well-established that a prisoner is not entitled to parole as a matter of right upon the expiration of his minimum term of imprisonment; and (2) there was conflicting evidence as to whether the APA rigidly applied the guideline ranges so as to make some inmates serve beyond their earliest parole eligibility dates. However, neither of these contentions invalidates the trial court's finding or analysis. There is no dispute that a prisoner is not automatically entitled to parole as of the date of statutory parole eligibility or upon the expiration of his minimum sentence, and the trial court's determination does not contradict these well-established principles in any way. Rather, what the trial court found was that an inmate must at least be "meaningfully" considered for parole at the earliest date of parole eligibility. The trial court found that, under some circumstances, there could be no "meaningful" consideration for parole when the lowest possible range on the guidelines chart was beyond the earliest parole eligibility date.
 {¶ 17} The APA counters this finding by the trial court with the second argument cited above. The APA claims there was conflicting evidence as to whether the APA rigidly applied the guidelines to preclude parole as of the initial date of eligibility because it presented evidence and deposition testimony that the parole board departed downward from the minimum guideline amount "quite often," "quite a lot," and "all the time." The APA's assertion is that because downward departure to the date of statutory eligibility or the minimum sentence was possible, the parole consideration was meaningful. However, although it is conceivable that there could be a question of fact if downward departure occurred, in fact, "quite often," "quite a lot," or "all the time," the APA fails to acknowledge the trial court's finding that these characterizations were belied by the actual statistics for such downward departures. The trial court found that the number of times that the parole board departed downward was "negligible." The trial court's characterization of the actual number of downward departures as being "negligible" was supported by the APA's own statistics, which indicated that, in 2002, downward departures were granted in only 3.78 percent of the total number of cases in which the guidelines were applied. Further, as pointed out by appellees, many of those 3.78 percent who did receive downward departures still were assigned ranges for which the minimum term exceeded their minimum statutory parole eligibility date or minimum sentence. Given the availability of the actual numbers and compiled statistics, the deposition testimony portraying the downward departures as occurring "quite often," "quite a lot," and "all the time" is of little persuasive value and fails to raise an issue of fact. We agree with the trial court's finding that this very small percentage represents a low frequency of downward departures and fails to render the considerations for parole meaningful.
 {¶ 18} We also note that the APA contests the trial court's statement that the APA "has intentionally disregarded * * * the sentences rendered by judges." The APA contends that there was conflicting evidence on this issue because a hearing officer testified that the parole board considered the trial court's sentence and anything the judge "wrote." However, the APA misconstrues the trial court's statement. We read the trial court's statement as meaning the APA disregarded the sentences rendered by judges under circumstances such as those illustrated above, i.e., when the APA's guidelines fail to give an inmate a meaningful possibility for parole as of the date of initial eligibility because the lowest possible range for parole eligibility on the guidelines chart is beyond the date of initial parole eligibility. In other words, because the trial court's sentence establishes the minimum sentence and, consequently, the date of statutory eligibility, the APA's denial of meaningful consideration at the time of initial parole eligibility effectively disregards the trial court's sentence. We fail to see any issue of material fact and find the APA's argument in this regard without merit.
 {¶ 19} The trial court also found that inmates were being denied meaningful consideration for parole, as required by Layne, in situations in which the inmate is assigned an offense category under the guidelines that nominally corresponded to the inmate's offense of conviction but which is "elevated" based upon the parole board's independent determination that the inmate committed a distinct offense for which he was not convicted. The APA counters that it is well-established that an inmate's criminal behavior may be considered in determining parole eligibility, citing to R.C. 2967.03 and Ohio Adm. Code 5120:1-1-07(B), which both authorize the APA to examine any relevant matters in considering parole. The APA asserts that neither provision makes a conviction concerning otherwise relevant conduct a pre-condition to its consideration. The APA also points out that the Ohio Supreme Court has expressly ratified consideration of conduct not resulting in convictions, including in Layne, and there is widespread consensus among scholars, researchers, and parole officials that an offender's conduct is a crucial factor in assessing his or her suitability for parole.
 {¶ 20} However, despite the APA's characterizations to the contrary, the trial court's decision in no way either implicitly or explicitly concludes that the APA cannot consider all and any behavior of an inmate in making its parole determination. Rather, the trial court merely held that Layne prohibits such distinct behavior for which the offender was not convicted from being used to place the inmate in an "elevated" offense category. We agree with the trial court's conclusion. Although, consistent with Layne, the general offense category assigned in such situations coincides with the offense for which the inmate was convicted, the APA's guidelines system permits higher offense categories to apply when the convicted offense involved various surrounding circumstances. The example cited by appellees to illustrate how the guidelines operate in this manner is in the case of an inmate convicted of rape. The general offense category for rape is Category 9 under the guidelines. However, if the victim is kidnapped to facilitate the rape, the category is "elevated" to Category 10. Thus, under the guidelines, the APA could elevate the rape from Category 9 to Category 10 based upon surrounding circumstances that demonstrated kidnapping, even if the inmate was never convicted of or pled guilty to kidnapping.
 {¶ 21} Layne prohibits this procedure. In Layne, at the syllabus, the Ohio Supreme Court held that the APA must assign an inmate the offense category score that corresponds to the offense or offenses of conviction. In cases such as the one described above, the APA continues to use offenses for which the inmate was not convicted to assign an offense category. A plain reading of Layne would indicate that the APA retains the discretion to consider the circumstances surrounding the crime, such as a kidnapping to facilitate a rape, in making its parole determination, but it may not use such activities for which the inmate was never convicted to assign an offense category. See id., at ¶ 28 ("the APA, when considering an inmate for parole, still retains its discretion to consider any circumstances relating to the offense or offenses of conviction, including crimes that did not result in conviction, as well as any other factors the APA deems relevant"). (Emphasis added.) At least one other court has recognized this nuance inLayne. See State v. Hall, Trumbull App. No. 2003-T-0114, 2004-Ohio-6471, at ¶ 37-38 (relevant facts and circumstances, including the offense or offenses set out in the indictment, as well as any circumstances surrounding the offense, may be considered for the purpose of considering parole in the second step of the parole process but not for the purpose of assigning the offense score in the first step of the process). To consider an offense for which an inmate was not indicted in assigning an offense category would run afoul of the Supreme Court's specific pronouncement in Layne that there is no meaningful consideration for parole when parole eligibility "is judged largely, if not entirely," on an offense category score that does not correspond to the offense or offenses of conviction set forth in the plea agreement. See id., at ¶ 27. For the APA to use an offense for which the inmate was not convicted in order to assign an "elevated" offense category would be to judge parole eligibility "largely" on an offense category score that does not correspond to the offense of conviction, a practice that is explicitly prohibited by Layne. For these reasons, the APA's argument in this respect is without merit.
 {¶ 22} The APA also argues that the trial court erred in finding that it denies appellees meaningful consideration whenever it "`[f]lop[s]' a class member for more than five years," meaning the parole board cannot require an inmate to serve more than five years before he is released or considered again for release. The APA asserts that Ohio Adm. Code5120:1-1-10(B)(2) expressly allows the APA to defer hearings up to ten years, and there was no proof or claim that this regulation was invalid. Appellees fail to address this issue in their appellate brief, and the trial court gave no reasoning for this finding.
 {¶ 23} An administrative regulation that is issued pursuant to statutory authority has the force of law unless it is unreasonable or conflicts with a statute covering the same subject matter. YoungstownSheet Tube Co. v. Lindley (1988), 38 Ohio St.3d 232, 234. As pointed out by the APA, Ohio Adm. Code 5120:1-1-10(B)(2) specifically permits the APA to defer hearings up to ten years in any case in which parole is denied at a prisoner's regularly constituted parole hearing and the board does not continue the prisoner to the expiration of the maximum sentence. Appellees failed to address this Ohio Administrative Code section in their motion for summary judgment, and, in fact, incorrectly contended in their motion that there was no statute or rule that allowed the APA to defer an inmate's parole eligibility for a decade.
 {¶ 24} Thus, pursuant to Youngstown, the only way this court may find that Ohio Adm. Code 5120:1-1-10(B)(2) is invalid is to find that it is unreasonable or conflicts with a statute covering the same subject matter. As there is no allegation that it conflicts with any statute, we are left to determine whether the rule is unreasonable. Appellees argued in their motion for summary judgment in the trial court that "flopping" an inmate for up to ten years denies an inmate meaningful parole consideration. Appellees concede that reasonable continuances of five years until an inmate's next parole hearing are not unlawful, but contend ten years is too infrequent to effectively constitute a lawful deferment of parole eligibility.
 {¶ 25} However, for this court to find that ten years is too long and five years is acceptable, as the trial court found, would be to merely substitute our own opinion for that of the APA's. Such a determination would be an arbitrary conclusion with little rationale behind it and would place this court in the position of policymaker for the APA. Without any further evidence or arguments on which to base such a conclusion, we must find there remains a genuine issue of material fact as to whether the APA's ability to continue parole hearings up to ten years pursuant to Ohio Adm. Code 5120:1-1-10(B)(2) constitutes meaningful consideration so as to render it a reasonable enactment. Therefore, this portion of the APA's first assignment of error is well-taken.
 {¶ 26} The APA also argues the trial court erred in finding that the APA has denied appellees meaningful parole consideration by intentionally disregarding new statutory prison terms under S.B. No. 2. The APA claims that the Ohio Revised Code makes S.B. No. 2 irrelevant to appellees' parole proceedings and factual questions exist about whether S.B. No. 2 was considered. However, as we have already found that the APA denied appellees meaningful parole based upon several other grounds, and disposition of this issue is not vital to determining any other issues or to the trial court's ultimate order, we need not address this argument. For all the foregoing reasons, the APA's first assignment of error is sustained in part and overruled in part.
 {¶ 27} The APA argues in its second assignment of error that the trial court erred when it granted appellees summary judgment on their contract claims and denied the APA's judgment on the pleadings on that claim. Appellees asserted that the APA violated their contractual plea agreements with the state by denying them meaningful consideration for parole eligibility at the earliest possible date. With regard to appellees' contract claims, the trial court found that most of the appellees who were subject to the new guidelines entered into their plea agreements when the matrix was being used and justifiably relied upon its continued use. The court also found that the law in effect as of the time of the contractual plea agreement was entered is part of the contract, as is the usage and customs relied upon by appellees. The trial court then concluded that, although appellees performed their parts by waiving trials and entering pleas, in 1998, the state unilaterally and improperly changed the terms of their contractual plea agreements by utilizing the guidelines to deny meaningful consideration for parole eligibility.
 {¶ 28} A plea agreement is a contract between the state and a defendant and is subject to contract law standards. State v. Butts
(1996), 112 Ohio App.3d 683, 685-686. A county prosecutor is an agent of the state for purposes of prosecuting crimes committed within his or her county. State v. Barnett (1998), 124 Ohio App.3d 746, 755. Further, the APA is an agency of the state which must honor the state's agreements. Vendrick v. Ohio Adult Parole Auth., Cuyahoga App. No. 80030, 2002-Ohio-658.
 {¶ 29} The APA asserts that the trial court erred in finding the state breached its plea agreements with appellees because appellees produced no evidence that their plea agreements addressed parole. We disagree. The questions certified to the Ohio Supreme Court in Layne all concerned whether the APA breached the plea agreement between a criminal defendant and the state. Although appellees' plea agreements in the present case may not mention parole eligibility, there is no indication in Layne that any of the plea agreements at issue in that case mentioned parole eligibility either, and, in fact, in one of the consolidated cases inLayne, it is clear that parole eligibility was not mentioned in the plea agreement. See Houston v. Wilkinson (June 29, 2001), Allen App. No. 1-01-52 ("Indeed, there is nothing in the record to indicate that the terms of his release were anywhere in the plea and there is certainly nothing to show that he was promised a minimum sentence or a certain `guideline level'"). Given the lack of any indication in Layne that parole eligibility was mentioned in the other plea agreements in that case, it is highly doubtful that they contained any, as the existence of such a clause in the plea agreements would have provided a more expedient analytical route to take in disposing of the issues. Thus, it is apparent from Layne that, regardless of whether parole eligibility was outlined by the plea agreement, a defendant has an expectation that he will be assigned an offense category score consistent with his conviction and plea, rather than the charges included within the indictment, and that the state breaches its plea agreement with the defendant when its actions run afoul of such expectation. See Layne, at ¶ 27. At least one other court has recognized this facet of Layne. See Hall, supra, at ¶ 40-41 (noting "as dicta" that, even though the defendant's signed guilty plea did not mention parole eligibility, the state could still be found to have breached defendant's plea agreement, as allowed in Layne). Therefore, as the Ohio Supreme Court in Layne clearly permitted claims for breach of plea agreements when there was no evidence that the plea agreements addressed parole, we find appellees' failure to produce evidence that their plea agreements addressed parole in the present case is not an impediment to their action. The trial court did not err in granting summary judgment to appellees and denying the APA judgment on the pleadings based on this issue. Therefore, the APA's second assignment of error is overruled.
 {¶ 30} The APA argues in its third assignment of error that the trial court erred in granting appellees summary judgment on their separation of powers claim because the APA's actions did not usurp judicial authority. According to the doctrine of the separation of powers, "`each of the three grand divisions of the government, must be protected from the encroachments by the others, so far that its integrity and independence may be preserved.'" South Euclid v. Jemison (1986), 28 Ohio St.3d 157, 159, quoting Fairview v. Giffee (1905), 73 Ohio St. 183, 187. Although Ohio does not have an overt constitutional provision declaring a doctrine of separation of powers, the concept is firmly established in those sections defining the substance and scope of powers granted to the three branches of state government. State v. Harmon (1877), 31 Ohio St. 250.
 {¶ 31} The APA argues that its use of the grid system in the guidelines does not violate the separation of powers doctrine because: (1) it is procedurally impossible for it to "usurp judicial authority," as the court's authority ends when an inmate enters prison; and (2) a finding that it usurped judicial authority would be contrary to precedent establishing that the APA has exclusive discretion and authority over parole release decisions. The APA cites several general, legal propositions to support its arguments. The APA correctly asserts that a case is within the hands of the executive officers of the law after a sentence has been executed and, after that point, a trial judge is without authority over the sentence. See Columbus v. Messer (1982),7 Ohio App.3d 266, 268; United States v. Benz (1931), 282 U.S. 304,51 S.Ct. 113. The APA further points out that its act of determining parole is not a judicial function, but is purely executive in nature. Buddv. Kinkela, Franklin App. No. 01AP-1478, 2002-Ohio-4311, at ¶ 15, citingRose v. Haskins (1968), 18 Ohio Misc. 81. The APA also correctly indicates that the executive portion of a sentence commences and the judicial portion terminates when "the defendant is delivered from the temporary detention facility of the judicial branch to the penal institution of the executive branch." Messer, at 268, citing Benz,
supra.
 {¶ 32} Nevertheless, we find the APA's arguments unpersuasive. Its contention that it is "impossible" for its actions to "usurp judicial authority" merely because they occurred after the courts' authority had ceased is simply illogical on its face. Thus, although parole is within the powers of the executive branch, such cannot possibly mean that the APA's powers in this regard are unfettered. Indeed, the Ohio Supreme Court has explicitly recognized that the APA's wide-ranging authority and discretion over parole matters must yield when they run afoul of statutory enactments and contractual law. See Layne, at ¶ 28. The same must hold true when the APA's authority and discretion run afoul of the constitutional doctrine of separation of powers.
 {¶ 33} We also disagree with the APA's characterization that the trial court held it "usurped judicial authority." What the trial court in the present case found, in essence, was that the APA was assuming the underlying "function" of the judiciary by executing its own authority in the manner described. In making its arguments herein, the APA needlessly focuses on when the authority of the judiciary procedurally ends. When the authority of the judiciary ends procedurally is not relevant to the present issue. Neither is the procedural scope of its own "authority" relevant. Rather, what is relevant to the present analysis is the underlying "function" the APA assumed in executing its authority. Although the APA may be correct that the judiciary branch lost "authority" over the sentencing long before the APA took its actions in executing its parole determinations, the APA was still capable of impermissibly attempting to exercise the same "function" of the judiciary in executing its own authority, as the trial court found it did.
 {¶ 34} Based upon our previous determinations under the APA's first assignment of error, we agree with the trial court that the APA's actions impermissibly encroached upon those functions exclusively within the domain of the judiciary branch. The judiciary branch has the power to set minimum and maximum sentences. See Papp v. Ohio Adult Parole Auth. (Jan. 24, 2002), Franklin App. No. 01AP-892. However, the APA's denial of meaningful consideration as of the earliest parole eligibility date, in effect, disregarded the trial court's sentence. Although the APA did not overtly assume the trial court's function to set the minimum sentence and, consequentially, the statutory date of parole eligibility, its denial of meaningful consideration had the effect of rendering the trial court's sentence meaningless and instituting its own minimum sentence and statutory date of parole eligibility. In doing so, the APA improperly took on the function of the judiciary branch of the government, in violation of the doctrine of separation of powers. For these reasons, the APA's third assignment of error is overruled.
 {¶ 35} Appellees argue in their cross-assignment of error that the trial court erred in granting summary judgment to the APA on appellees' claim that the APA failed to promulgate the rules in accordance with the Administrative Procedure Act. The trial court found that parole guidelines are not administrative rules because the APA has discretion as to whether to apply them to inmates, and, as such, they need not be promulgated in accordance with the Administrative Procedure Act, relying upon this court's decision in Poluka v. Ohio Adult Parole Auth., Franklin App. No. 02AP-484, 2003-Ohio-153. Appellees argue that, because the guidelines are effectively rules with a general and uniform operation, and not merely discretionary guidelines, they must be promulgated pursuant to the Administrative Procedure Act.
 {¶ 36} The APA first counters that this issue cannot be determined in the context of a declaratory judgment action, citing two prior decisions of this court. In Wise v. Ohio Dept. of Rehab. Corr. (1992),84 Ohio App.3d 11, we found that, not being a rule, the parole guidelines do not fall under the purview of the declaratory judgment procedures outlined in R.C. 2721.03, which limits its application to constitutional provisions, statutes, and rules. Thus, we concluded inWise that a declaratory judgment action is not the appropriate remedy to preclude utilization of a rule not properly adopted in accordance with statutory procedures. We later followed Wise to find that declaratory judgment is not the proper method to contest the utilization of a rule regarding the APA's death penalty clemency procedure that was not properly promulgated. See Coleman v. Ohio Adult Parole Auth. (1996),115 Ohio App.3d 212, 215. Thus, pursuant to Wise and Coleman,
appellees would be precluded from using a declaratory judgment action to challenge the promulgation of the guidelines, and summary judgment would have been appropriate.
 {¶ 37} However, even if we could address this issue, as we did inPoluka after distinguishing it procedurally, we agree with the trial court that summary judgment in favor of the APA would be appropriate based upon Poluka. In Poluka, we reversed the trial court's determination that the parole guidelines were void because they had not been promulgated as administrative rules. This court found "[i]t is well established that the parole guidelines are not administrative rules and need not be promulgated in accordance with the Administrative Procedure Act." Id., at ¶ 11, citing Mayrides v. Ohio Adult Parole Auth. (Apr. 30, 1998), Franklin App. No. 97APE08-1035.
 {¶ 38} Despite the fact that Poluka addressed the same 1998 parole guidelines at issue in the present case, appellees claim it is inapplicable because it relied upon Mayrides, which addressed the former, less-complicated, one-page matrix. Appellees assert that, unlike the matrix, the guidelines are detailed, specifically tailored regulations that have a uniform operation. However, we agree with the trial court that the determination in Mayrides was not based upon the length or complexity of the materials at issue. Rather, Mayrides simply relied upon the well-established fact that guidelines are not rules that are binding on the parole board. This principle holds as true for the guidelines at issue in the present case as for the matrix at issue inMayrides. Thus, even assuming, arguendo, that we could address this issue in the current case, we see no reason to depart from our recent precedent in Poluka. For these reasons, appellees' cross-assignment of error is overruled.
 {¶ 39} Accordingly, the APA's first assignment of error is sustained in part and overruled in part, its second and third assignments of error are overruled, and appellees' cross-assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this case is remanded to that court for proceedings consistent with the above opinion.
Judgment affirmed in part and reversed in part; case remanded.
Bryant and Lazarus, JJ., concur.