[Cite as *Swihart v. Ohio Adult Parole Auth.*, 2014-Ohio-3305.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Michael Swihart, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 13AP-993 |
| | | (C.P.C. No. 07CV-2229) |
| Chairman/Chairperson of the Ohio Adult Parole Authority et al., | : | |
| | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |
| | : | |

---

## D E C I S I O N

### Rendered on July 29, 2014

---

*Swope and Swope - Attorneys at Law*, **and** *Richard F. Swope*, **for appellant.**

*Michael DeWine*, **Attorney General, and** *Peter L. Jamison*, **for appellees.**

---

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Plaintiff-appellant, Michael Swihart, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees Chairman/Chairperson of the Ohio Adult Parole Authority ("OAPA"), current director of the Ohio Department of Rehabilitation and Correction ("ODRC"), Dr. Sandra Mack, member of the OAPA, William Oberdier, hearing officer for the OAPA, Richard E. Fitzpatrick, hearing officer for the OAPA, and all former and current members of the OAPA (collectively "defendants"). Because the trial court properly granted summary judgment to appellees, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  In 1977, appellant, 18 years old at the time, confessed to killing his father, mother, and two younger brothers with a baseball bat and then burning down his family's home in an attempt to conceal the crime.  He was subsequently indicted on one count of aggravated murder, three counts of murder, and one count of aggravated arson.  He entered a plea of not guilty by reason of insanity.  A three-judge panel conducted a trial, at which both the state and the defense offered psychiatric evidence related to appellant's insanity plea.  The panel acquitted appellant of the murder of his father, but convicted him of the aggravated murder of one brother, the murders of his mother and other brother, and aggravated arson.  On April 10, 1978, the trial court sentenced appellant to death for the aggravated murder, 15 years to life for the two counts of murder, and 7 to 25 years for the aggravated arson; the sentences were ordered to be served concurrently.  On December 20, 1978, the Ninth District Court of Appeals, in response to the United States Supreme Court's decision in *Lockett v. Ohio,* 438 U.S. 586 (1978), modified appellant's death sentence to life imprisonment, making him eligible for parole.  Under the parole eligibility statute in effect in 1978, appellant was eligible for parole after 15 years.

{¶ 3}  Following parole hearings in 1992 and 2002, appellant was denied parole, based primarily on the severity of his crimes.  In September 2004, appellant, pro se, filed a 42 U.S.C. 1983 action in federal court against the then-director of the ODRC and former and current members of the OAPA ("federal defendants").  Appellant asserted violations of his federal constitutional rights stemming from his 1992 and 2002 parole hearings.  He also claimed a right to furlough release.  The district court granted the federal defendants' motion to dismiss for failure to state a claim upon which relief could be granted, and that decision was affirmed on appeal.  *Swihart v. Wilkinson,* 209 Fed.Appx. 450 (6th Cir.2006).

{¶ 4}  In 2005, while his federal case and appeal were pending, appellant was again considered for parole.  Once again, he was denied parole based upon the serious nature of his crimes.

{¶ 5}  On February 15, 2007, appellant filed a pro se complaint against appellees seeking, as relevant here, declaratory judgment and injunctive relief.  Appellant alleged that appellees had, in effect, unilaterally modified his sentence of 15 years to life to life without

the possibility of parole by conducting "sham" parole hearings in which he was denied meaningful consideration for parole. Appellant maintained that appellees predetermined that he should never be granted parole and failed to consider factors other than the serious nature of his crimes. Appellant further alleged that appellees, in contravention of R.C. 2967.26 and 2967.27, denied his right to furlough release. He also alleged he was unlawfully denied honor status.

{¶ 6} In response to the complaint, appellees filed a Civ.R. 12(B)(6) motion to dismiss, asserting that appellant's case should be dismissed on two grounds: (1) his claims were barred by the doctrine of res judicata, as he did or could have litigated them in his federal action, and (2) the discretionary nature of parole rendered his allegations without merit as a matter of law. Appellant retained counsel, who filed a response to appellees' motion to dismiss. The trial court granted appellees' motion; however, this court reversed on appeal. *Swihart v. Ohio Adult Parole Auth.,* 10th Dist. No. 08AP-222, 2008-Ohio-6420. We concluded the trial court erred in granting the motion on res judicata grounds, having inappropriately relied upon evidentiary materials outside the pleadings in doing so. *Id.* at ¶ 24. We further concluded that, as a matter of law, appellant had pled sufficient allegations regarding appellees' actions to survive a Civ.R. 12(B)(6) motion. *Id.* at ¶ 25-27. More particularly, we stated, "[p]laintiff here asserts he was denied meaningful consideration because, in determining his parole eligibility, defendants used a sentence different than the one he received. The discretionary nature of parole does not afford defendants the right to deny plaintiff meaningful consideration on the basis of a sentence other than the one he was given." *Id.* at ¶ 27, citing *Layne v. Ohio Adult Parole Auth.,* 97 Ohio St.3d 456, 2002-Ohio-6719, and *Ankrom v. Hageman,* 10th Dist. No. 04AP-984, 2005-Ohio-1546.

{¶ 7} In August 2007, while his state case and appeal were pending, appellant was again considered for parole. Following the August 2007 hearing and an October 2007 review by the Ohio Parole Board ("OPB"), appellant was once again denied parole based upon the severity of his crimes.

{¶ 8} On October 9, 2009, appellees filed a motion for summary judgment, arguing that appellant received meaningful consideration for parole at his prior parole hearings and was not unlawfully denied furlough and honor status. Appellant filed a memorandum contra on November 10, 2009, asserting that he was denied meaningful consideration for parole

because appellees considered only the severity of his crimes and ignored his positive institutional behavior and that he was unlawfully denied furlough and honor status. In support, appellant filed his own affidavit and a joint stipulation of the parties. Appellant attached as Exhibits A and B to the joint stipulation his complete parole file, and the then-current OPB guideline manual, respectively. In a decision and entry filed January 5, 2011, the trial court denied appellees' motion for summary judgment, finding that appellant had demonstrated genuine issues of material fact as to both prongs of appellees' summary judgment motion.

{¶ 9} Appellees filed a second motion for summary judgment on April 4, 2011, arguing that appellant's August 2007 parole hearing and October 2007 OPB review rendered moot his claim that he was denied meaningful consideration for release on parole in 2005, and that his claims were barred by res judicata, as they were already litigated, or should have been litigated, in his federal action. In support of the motion, appellees attached the affidavit of Cynthia Mausser, chairperson of the OPB. On April 29, 2011, the parties filed a joint stipulation that the trial court was to consider the previously-filed record in ruling on the summary judgment motion. In his May 12, 2011 memorandum contra, appellant argued his claims were not barred by res judicata, as his federal action was concerned solely with federal constitutional issues, not state issues as raised in his complaint. He further argued that the issue of whether he was afforded meaningful consideration for parole in 2005 remained viable, as he was not provided meaningful consideration for parole in the 2007 proceedings. Appellant appended to his memorandum contra his own affidavits. By decision and entry issued February 28, 2013, the trial court granted in part and denied in part appellees' second motion for summary judgment. Specifically, the court concluded appellant received meaningful consideration for parole during the 2007 parole proceedings, rendering his claim for relief as to the 2005 proceedings moot. The court further found the prior federal action did not preclude his furlough and honor status claims.

{¶ 10} On May 24, 2013, appellees filed a third motion for summary judgment, contending that appellant's furlough claim should be dismissed because, even assuming, arguendo, that the furlough statutes in effect in 1977 could still be applied to him, those statutes established no right to furlough consideration because they were merely permissive and did not mandate that every eligible inmate must be considered for furlough. As to his

honor status claim, appellees argued that Ohio courts have consistently held that prison inmates have no right to a particular security classification. Appellees supported their motion with the affidavit of Austin Stout, assistant chief legal counsel in ODRC's Legal Services section. Appellant filed a memorandum contra in response, supported by his own affidavit. By decision and entry issued October 28, 2013, the trial court granted appellees' motion for summary judgment and dismissed the case.

## II. ASSIGNMENTS OF ERROR

{¶ 11} In a timely appeal, appellant sets forth the following eight assignments of error:

> ASSIGNMENT OF ERROR NO. 1. THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT ON DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT FILED ON APRIL 4, 2011, THERE BEING A FACTUAL DISPUTE AS TO PROVIDING PLAINTIFF-APPELLANT A MEANINGFUL HEARING, INCLUDING THE HEARING HELD IN 2002.
>
> ASSIGNMENT OF ERROR NO. 2. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT FILED ON MAY 24, 2013, AS TO FURLOUGH AND HONOR STATUS.
>
> ASSIGNMENT OF ERROR NO. 3. THE TRIAL COURT, IN ITS DECISION REGARDING DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT FILED ON APRIL 4, 2011, IMPROPERLY BASED ITS DECISION ON THE AFFIDAVIT OF MS. MAUSSER, WHICH SIMPLY REITERATES THE DEFENDANT-APPELLEE BOARD'S ASSERTION THAT PLAINTIFF-APPELLANT CANNOT BE PAROLED BECAUSE OF THE NATURE OF THE CRIME WHICH FACT WILL NEVER CHANGE AND BY ASSERTING THERE WAS NO EVIDENCE OF THE HEARING BEING UNFAIR.
>
> ASSIGNMENT OF ERROR NO. 4. THE TRIAL COURT, IN RULING ON THE APRIL 4, 2011 MOTION FOR SUMMARY JUDGMENT ERRED BY RULING THE DEFENDANTS-APPELLEES CANNOT ABUSE THEIR DISCRETION AND IN FACT HAVE UNLIMITED DISCRETION.
>
> ASSIGNMENT OF ERROR NO. 5. THE TRIAL COURT, IN RULING ON THE APRIL 4, 2011 MOTION FOR SUMMARY JUDGMENT, ERRONEOUSLY RULED THAT A CHANGE OF

RULES IN EFFECT CHANGING PLAINTIFF-APPELLANT'S SENTENCE IS NOT CONSTITUTIONALLY PROTECTED, TO WIT: OHIO CONSTITUTION, ARTICLE 1, SECTION 16 AND THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION.

ASSIGNMENT OF ERROR NO. 6. THE TRIAL COURT, IN RELYING ON CURRENT LEGISLATION AND ADMINIS-TRATIVE REGULATIONS TO DENY APPELLANT CON-SIDERATION FOR FURLOUGH OR HONOR STATUS COMMITTED ERROR.

ASSIGNMENT OF ERROR NO. 7. THE TRIAL COURT ERRED IN RULING IN ITS DECISION ON DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT FILED APRIL 4, 2011, THAT PLAINTIFF-APPELLANT'S CLAIMS WERE MOOT.

ASSIGNMENT OF ERROR NO. 8. THE TRIAL COURT ERRED IN RULING ON DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT FILED ON MAY 24, 2013, THAT RETROACTIVE APPLICATION OF LEGIS-LATION OR ADMINISTRATIVE REGULATION WHICH ENHANCE PLAINTIFF-APPELLANT'S SENTENCE, CON-DITIONS OF INCARCERATION OR RIGHT TO PAROLE CONSIDERATION, DID NOT VIOLATE STATE OR FEDERAL CONSTITUTIONAL PROTECTION, TO-WIT: OHIO CONSTITUTION, ARTICLE I, SECTION 2, ARTICLE 1, SECTION 16 AND ARTICLE II, SECTION 28; AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

## III. DISCUSSION

{¶ 12} Appellant's eight assignments of error essentially raise two primary issues: (1) whether he was afforded meaningful consideration for parole, and (2) whether he was entitled to furlough release and honor status.

### A. Standard of Review

{¶ 13} We begin our analysis with the applicable standard of review. Appellate review of summary judgment is de novo, which requires an independent review of the record without deference to the trial court's decision. *New Destiny Treatment Ctr., Inc. v. Wheeler,* 129 Ohio St.3d 39, 2011-Ohio-2266, ¶ 24; *Miller v. J.B. Hunt Transport, Inc.,* 10th Dist. No. 13AP-162, 2013-Ohio-3892, ¶ 20. Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written

admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment "is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party." *Brown v. Ohio Dept. of Rehab. & Corr.,* 1oth Dist. No. 12AP-891, 2013-Ohio-4207, ¶ 20, citing *Stevens v. Ohio Dept. of Mental Health,* 10th Dist. No. 12AP-1015, 2013-Ohio-3014, ¶ 11, citing *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 66 (1978).

{¶ 14} Under Civ.R. 56(C), "the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact." *Anderson v. Preferred Title & Guaranty Agency, Inc.,* 10th Dist. No. 13AP-385, 2014-Ohio-518, ¶ 14, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). "The moving party, however, cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.,* citing *Dresher* at 293, and *Vahila v. Hall,* 77 Ohio St.3d 421 (1997). "Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial." *Id.,* citing *Dresher* at 293; *Vahila* at 430.

{¶ 15} With the foregoing principles in mind, we turn to appellant's arguments.

## B. Meaningful Consideration for Parole

{¶ 16} Appellant contends he has not been provided meaningful consideration for parole because appellees have consistently considered only the serious nature of his crimes and have failed to consider other pertinent factors. Appellant maintains that appellees' actions have effectively resulted in a de facto sentence of life imprisonment without the possibility of parole in contravention of the indeterminate 15-to-life sentence imposed by the trial court.

{¶ 17} An inmate has no inherent or constitutional right to release on parole before the expiration of his or her sentence. *Chafin v. Ohio Adult Parole Auth.,* 10th Dist. No. 13AP-646, 2014-Ohio-1192, ¶ 18, citing *Festi v. Ohio Adult Parole Auth.,* 10th Dist. No. 04AP-1372, 2005-Ohio-3622, ¶ 14, citing *State ex rel. Miller v. Leonard,* 88 Ohio St.3d 46, 47 (2000). "The decision whether and when to grant parole lies within the absolute discretion of OAPA." *Id.,* citing R.C. 2967.03; *Walker v. Ghee,* 10th Dist. No. 01AP-960 (Jan. 29, 2002); *Festi; Woods v. Telb,* 89 Ohio St.3d 504, 512 (2000).

{¶ 18} Ohio Adm.Code 5120:1-1-07(A) sets forth various factors parole authorities must consider when determining whether an inmate should be released on parole. The provision provides that parole authorities may decide not to release an inmate when: (1) there is substantial reason to believe that the inmate will engage in further criminal conduct, (2) there is substantial reason to believe that, due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety or that, due to the serious nature of the crime, the release of the inmate would not further the interest of justice nor be consistent with the welfare and security of society, (3) there is substantial reason to believe that the release of the inmate would not act as a deterrent to the inmate or to other institutionalized inmates from violating institutional rules and regulations, and (4) there is need for additional information upon which to make a release decision. Ohio Adm.Code 5120:1-1-07(B)(1) through (18) provides 17 specific factors, plus an "any other factors" catch-all factor, that parole authorities must consider when contemplating the release of an inmate. Ohio Adm.Code 5120:1-1-07(C) provides that "[t]he consideration of any single factor, or any group of factors, shall not create a presumption of release on parole, or the presumption of continued incarceration. The parole decision need not expressly address any of the foregoing factors."

{¶ 19} The evidence submitted in support of appellees' second motion for summary judgment belies appellant's claim that he has not been provided meaningful consideration for parole. As noted above, appellees submitted with their second motion for summary judgment the affidavit of Cynthia Mausser, chairperson of the OPB. Mausser attested she had reviewed appellant's parole records and concluded that parole authorities had considered all the mandatory factors set forth in Ohio Adm.Code 5120:1-1-07 before denying appellant release on parole.

{¶ 20} Specifically, Mausser averred that the OPB decision sheet from appellant's 2002 parole hearing indicated that the OPB had considered his criminal history risk score and his institutional conduct. As to appellant's 2005 parole hearing, Mausser averred the decision sheet from that hearing indicated the OPB had considered his institutional conduct, remorsefulness, institutional adjustment, and family support. Mausser acknowledged that although the 2005 decision sheet also included the hearing officer's opinion that appellant was given mercy by the Supreme Court of Ohio's decision to commute his death sentence and that he should remain incarcerated for the rest of his natural life given the heinous nature of his crimes, OPB member Dr. Mack conducted an independent review of the hearing officer's recommendation, which included consideration of the Ohio Adm.Code 5120:1-1-07 factors, and ultimately concluded appellant should be denied parole. Mausser attested that Dr. Mack "declined release on parole not because she felt that [appellant] was not eligible for parole, nor because she (and the Board) unilaterally altered [appellant's] sentence to life without the possibility of parole, but rather because in her professional judgment [appellant] was not yet suitable for release." (Mausser Affidavit, ¶ 11.)

{¶ 21} Mausser further stated that appellant's August 2007 hearing and October 2007 OPB review complied with Ohio Adm.Code 5120:1-1-07, as all mandatory factors had been considered. She further averred that appellant "had a genuine possibility of being granted parole if the Board felt he was suitable." (Mausser Affidavit, ¶ 13.) Mausser attested that the OPB recognized appellant's "good institutional conduct and good institutional programming," that he had received his last disciplinary ticket in 1993, he had completed several programs while in prison, and he had expressed remorse about the crimes he committed. (Mausser Affidavit, ¶ 13.) She further attested, however, that despite recognizing these positive factors, the OPB ultimately concluded appellant was not yet suitable for release on parole. Mausser noted the OPB had determined there was substantial reason to believe that appellant would engage in further criminal conduct or that he would not conform to the conditions of release, and that due to the serious nature of his crimes, appellant's release into society would create undue risk to public safety and/or would not further the interest of justice or be consistent with the welfare and security of society.

{¶ 22} In his affidavit filed in response to appellees' second motion for summary judgment, appellant contested Mausser's averment that the OPB considered all the Ohio

Adm.Code 5120:1-1-07 factors before denying him release on parole. Specifically, appellant averred that the OPB could not have complied with Ohio Adm.Code 5120:1-1-07 because he was never given a psychological examination prior to any of his parole hearings as required by Ohio Adm.Code 5120:1-1-07(B)(5). That provision states that, in consideration of the release of an inmate, the OPB shall consider any reports of physical, mental or psychiatric examination of the inmate. As noted by appellees, however, this provision directs the OPB to consider any psychiatric reports, but does not direct them to order such examination. Moreover, the parties' November 10, 2009 joint stipulation demonstrates that psychiatric reports were part of the record reviewed in conjunction with appellant's August 2007 parole hearing. The joint stipulation includes a psychiatric examination, which the sentencing court had ordered to be conducted on appellant. The psychiatric examination includes the author's opinion that appellant "was not mentally deficient at the time of the offense." (R. 93, at 180.)

{¶ 23} As noted above, Ohio Adm.Code 5120:1-1-07(A)(2) expressly provides that parole authorities may rely upon the serious nature of the offense to determine whether the inmate would create a risk to public safety or whether release on parole would further the interests of justice or be consistent with the welfare and security of society. Further, R.C. 2967.03 vests discretion in the OAPA to "grant a parole to any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." "R.C. 2967.03 has been construed as 'allow[ing] the board to consider any evidence it feels is pertinent to the question of whether the prisoner is fit to be at liberty without harming others.' " *Nelson v. Mohr,* 10th Dist. No. 13AP-130, 2013-Ohio-4506, ¶ 18, quoting *State ex rel. Thompson v. Clark,* 7 Ohio App.3d 191, 192 (10th Dist.1982). *See also Fugett v. Ghee,* 10th Dist. No. 02AP-618, 2003-Ohio-1510, ¶ 17 (finding that both the Ohio Revised Code and the Ohio Administrative Code grant OAPA authority to investigate and examine any matters affecting an inmate's ability to be at liberty without being a threat to society).

{¶ 24} Appellant contends that appellees abused their discretion in denying him parole because they ignored his post-incarceration behavior and accomplishments and chose to focus on the serious nature of his crimes. However, Mausser's affidavit establishes that

appellees considered those facts. It is clear that appellees, in a reasonable exercise of discretion, have determined that the serious nature of appellant's crimes would create a risk to public safety, would not further the interests of justice, and/or would not be consistent with the welfare and security of society.

{¶ 25} This court has rejected claims similar to those asserted by appellant in the present case. In *Weatherspoon v. Mack,* 10th Dist. No. 07AP-1083, 2008-Ohio-2288, an inmate argued he was denied meaningful consideration for parole because the OPB only considered "negative factors" and there was "no evidence" that the OPB considered any positive factors. *Id.* at ¶ 19. This court rejected that argument, upholding the trial court's finding that the OPB decision sheet contained "sufficient rationale" to justify its decision to continue the inmate's incarceration. *Id.* at ¶ 22.

{¶ 26} In the present case, the trial court, in reviewing appellant's contention that he did not receive meaningful consideration for parole, determined that the evidence advanced by appellees in support of their second summary judgment motion demonstrated that appellees considered all factors, both favorable and unfavorable. The court further found that "[t]he rules and case law indicate that the Parole Authority may, in its discretion, base its decision to grant or deny parole on any one factor, including the seriousness of the offense." (Feb. 28, 2013 Decision and Entry, 10.) Upon review, we agree with the trial court that the record before this court supports the OAPA's determination. As noted above, the OAPA's decision is discretionary, and the OAPA was not required to find appellant suitable for release on parole based on allegedly positive factors where the record contains sufficient reasons weighing against his release.

{¶ 27} Finally, we note that appellant's reliance on *Layne* 456 and *Ankrom* is misplaced. In *Layne,* the Supreme Court of Ohio concluded the defendants in that case were not provided meaningful consideration for parole when the OPB treated them as having committed offenses other than those for which they were convicted. *Tran v. State,* 10th Dist. No. 09AP-587, 2009-Ohio-6784, ¶ 18, construing *Layne* at ¶ 24-28. In *Ankrom,* this court held that a parole board denies an inmate meaningful consideration by adhering to guidelines that do not allow for parole consideration until long after an inmate is legally eligible. *Id.,* construing *Ankrom* at ¶ 15, 34. In the present case, appellant does not argue that appellees treated him as having committed offenses other than those for which he was

convicted, nor does he argue appellees adhered to guidelines that do not allow for parole consideration until long after he was eligible for parole. To the contrary, he argues appellees placed too much emphasis on the seriousness of his offenses and not enough emphasis on his positive institutional behavior. However, as we stated above, the record establishes that appellees considered mitigating factors, including appellant's post-incarceration record, but concluded this mitigation did not outweigh the need for appellant's further incarceration due to the seriousness of his offenses.

{¶ 28} For the foregoing reasons, appellant's first, third, fourth, fifth and seventh assignments of error are overruled.

### C. Furlough and Honor Status

{¶ 29} Appellant contends that, pursuant to R.C. 2929.61(D) and 1.58, the laws in effect when he was convicted in 1977 must still be applied to him, and under those laws he has a right to furlough release. Appellant also contends he is entitled honor status.

{¶ 30} The evidence submitted in support of appellees' third motion for summary judgment belies appellant's claim that he is entitled to furlough release or honor status. As noted above, appellees submitted with their third motion for summary judgment the affidavit of Austin Stout. In his affidavit, Stout attested to the following. At the time appellant was convicted, the state of Ohio had a furlough release program authorized under R.C. 2967.26 and 2967.27. R.C. 2967.26 governed vocational and educational furloughs; R.C. 2967.27 governed non-vocational furloughs. These statutes required OAPA to adopt rules and regulations to govern the furlough process and required that the rules and regulations be approved by the director of the ODRC. In accordance with the statutes, ODRC issued administrative rules concerning the administration of the furlough program. Vocational and educational furloughs, authorized by R.C. 2967.26, were governed primarily by Ohio Adm.Code 5120:1-1-23. Non-vocational furloughs, authorized by R.C. 2967.27, were governed primarily by Ohio Adm.Code 5120-9-35.

{¶ 31} In 1998, the furlough statutes were amended and the program was discontinued. Under the amended version of R.C. 2967.26, furlough was replaced with a transitional control program. Under the amended version of R.C. 2967.27, inmates were no longer permitted non-vocational furloughs; rather, they were permitted only escorted visits for the purpose of visiting a dying relative or the funeral of a relative. Following the 1998

amendments to R.C. 2967.26 and 2967.27, Ohio Adm.Code sections 5120:1-1-23 and 5120-9-35 were rescinded.  Presently, inmate eligibility for transitional control is governed by Ohio Adm.Code 5120-12-01 and escorted visits are governed by Ohio Adm.Code 5120-9-50. Consideration for furlough, transitional control or escorted visits was never mandatory under R.C. 2967.26 and 2967.27.

{¶ 32} Stout further averred that security classification of inmates is governed by Ohio Adm.Code 5120-9-52 and 5120-9-53, as well as ODRC Policy 53-CLS-01.  ODRC Policy 53-CLS-01 was revised in 2013.  Under the pre-2013 version of the policy, depending on the nature of their conviction, an inmate could not receive the lowest possible security classification.  Under the 2013 version of the policy, all inmates may be classified at the lowest security classification level.

{¶ 33} In his memorandum in response, appellant asserted that he was entitled to furlough release and honor status.  In his attached affidavit, appellant attested that several inmates serving sentences for murder and other violent offenses received furloughs and had been classified as honor status and worked in supervised and unsupervised positions outside the prison.

{¶ 34} Appellant's argument regarding furlough release fails because, even if the versions of R.C. 2967.26 and 2967.27 in effect when he was convicted were applicable to him, the statutes were permissive and did not confer any right upon him.  The version of R.C. 2967.26 in effect when appellant was convicted stated, in pertinent part, that "[t]he adult parole authority *may* grant furloughs to trustworthy prisoners confined in any state penal or reformatory institution for the purpose of employment, vocational training, educational programs, or other programs designated by the Director of correction within this state."  (Emphasis added.)  *See* Am.H.B. No. 637.  Similarly, R.C. 2967.27 provided, in pertinent part, that "[t]he department of rehabilitation and correction *may* grant furloughs to trustworthy prisoners confined in any state penal, reformatory, or other facility." (Emphasis added.)  *See* Am.H.B. No. 217.  The statutes provided that OAPA and ODRC *may* grant furloughs to eligible inmates, but did not state that eligible inmates *must* be granted furloughs.  In his affidavit, Stout attested that under R.C. 2967.26 and 2967.27, the granting of furloughs to eligible inmates was permissive, not mandatory.  Stout's attestation comports with Ohio law establishing that "statutory usage of the term 'may' is generally construed to

render optional, permissive, or discretionary the provision in which it is embodied." *State ex rel. Niles v. Bernard,* 53 Ohio St.2d 31, 34 (1978), citing *Dorrian v. Scioto Conservancy Dist.,* 27 Ohio St.2d 102 (1971). Further, one court has recently stated that "prisoners do not generally have a right to a furlough." *State v. Gambrel,* 4th Dist. No. 13CA17, 2014-Ohio-2520, ¶ 4(d).

{¶ 35} Appellant's argument that he is entitled to honor status is similarly unpersuasive. This court has rejected claims by inmates that they have a right to a particular security classification. Indeed, in *State ex rel. Richard v. Mohr,* 10th Dist. No. 12AP-873, 2013-Ohio-676, this court recently rejected inmates' claims that they were entitled to security classifications under the law that existed at the time of their convictions. *See also Semenchuk v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. No. 10AP-19, 2010-Ohio-5551, ¶ 15-16 (holding that security classification decisions are left to the discretion of prison officials and inmates have no due process rights to a particular security classification).

{¶ 36} For the foregoing reasons, appellant's second, sixth and eighth assignments of error are overruled.

## IV. CONCLUSION

{¶ 37} Having overruled each of the eight assignments of error advanced by appellant, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.